**Vanessa DIXON, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS; International Brotherhood of Police Officers, Local 382; Kenneth Lyons; Gerald Flynn; John Leary; and David Pender, Defendants.**

**Civil Action No. 01–11806–WGY.**

United States District Court, D. Massachusetts.

June 19, 2006.

Inga S. Bernstein, Zalkind, Rodriguez, Lunt Duncan, Boston, MA, for Plaintiff.

Joseph W. Monahan, III, Thomas J. Freda, Monahan & Padellaro, Cambridge, MA, Richard L. Barry, Jr., Quincy, MA, Peter J. Perroni, Gary G. Nolan, Nolan & Perroni, LLP, Lowell, MA, Joseph W. Monahan, III, Thomas J. Freda, for Defendants.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

This application for attorneys' fees follows a trial between the plaintiff Vanessa Dixon ("Dixon") and the defendants International Brotherhood of Police Officers ("IBPO"), the International Brotherhood of Police Officers, Local 382 ("Local 382"), Kenneth Lyons, Gerald Flynn, John Leary, and David Pender. Compl. [Doc. No. 1]. Filed under the Civil Rights Act, Title VII, 42 U.S.C. § 2000e, et *seq.*, ("Title VII"), and chapter 151B of the Massachusetts General Laws, Dixon sought to recover damages for acts of discrimination, harassment, assault, and retaliation allegedly taken against her by defendant co-workers and union, Local 382. Compl. ¶ 1. The jury returned a verdict in favor of Dixon in part, awarding $2,232,501 in total damages, $1,205,000 in compensatory damages and $1,027,501 in punitive damages. Jury Ver. [Doc. No. 157]. Thereafter, Dixon filed a timely motion requesting attorneys' fees and costs. Pl.'s Mot. for Att'ys' Fees and Costs [Doc. No. 176] ("Pl's Mot."). The Court here addresses the amount to award Dixon in attorneys' fees and costs in accordance with both Title VII and Chapter 151B of the Massachusetts General Laws.

## II. BACKGROUND

Dixon is a bi-racial woman who had worked as a police officer for the City of Lowell since 1994. Compl. ¶ 15. She had been a member of Local 382 during her entire tenure with the force. *Id.* ¶ 16. The IBPO is a labor organization orga-

nized by regional areas and charters of local units. *Id.* ¶ 5. Local 382 is a labor organization that represents Lowell Police Department police officers in the rank of patrol officer and is a local unit of one of the IBPO charters. *Id.* ¶ 4.

On October 26–27, 1998, Dixon, members of Local 382, and some corrections officers traveled in a bus rented by Local 382 to an event in Boston sponsored by the IBPO. Defs.' Statement of Facts [Doc. No. 70] ("Defs.' Facts") ¶ 1. On that bus trip, Dixon alleged that she was subjected to abuse and harassment at the hands of her fellow officers and union members. Compl. ¶ 18. Dixon approached the bus driver and asked to be let off the bus. Defs.' Facts ¶ 67. Eventually, the bus driver did so and Dixon ran down the street away from the bus. *Id.* ¶ 70.

Following the trip, Dixon's male colleagues faced discipline from the Lowell Police Department stemming from an internal affairs investigation into the bus trip. Pl.'s Statement of Facts in Dispute [Doc. No. 79] ("Pl.'s Facts") at 8. On November 19, 1998, Lowell Police Chief Edward Davis III issued a "no contact" letter to the officers involved in the harassment on the bus ordering that they stay away from Dixon. *Id.*, Ex. B. In addition, Officer Leary "received a verbal order to the same effect on November 19, 1998." *Id.*

On October 18, 2001, Dixon filed a claim alleging discrimination, retaliation, assault, defamation, and intentional infliction of emotional distress under Title VII and under Chapter 151B of Massachusetts General Laws. Compl. ¶¶ 1, 2. On October 18, 2005, the jury entered its verdict for Dixon on her claim of retaliation, awarding her $1,200,000 in compensatory damages and

$1,000,000 in punitive damages against the IBPO, and $2,500 punitive damages against Leary. Jury Ver. On her intentional infliction of emotional distress claim, the jury entered a verdict awarding her $2,500 in compensatory damages against Leary. *Id.* On her discrimination claim the jury awarded her $2,500 in compensatory damages and $25,000 in punitive damages against Local 382 and $1 punitive damages against Flynn. *Id.* The jury returned verdicts for the IBPO and Lyons on Dixon's defamation claim and for Leary and Pender on her assault claim. *Id.*

Thereafter, Dixon filed a timely motion requesting attorneys' fees and costs. *See* Pl.'s Mot. On February 7, 2006, the judgment was amended to include prejudgment interest at the rate of 12 percent from the date the claim was filed on October 18, 2001. Am. J. [Doc. No. 204]. The judgment was amended again to restrict the prejudgment interest to compensatory damages only. Second Am. J. [Doc. No. 212]. The IBPO, Local 382, Leary, and Flynn (collectively, the "Police Defendants") filed Motions for Judgment as Matter of Law or in the Alternative, for a New Trial or Remittur [Doc. Nos. 169, 171, 173], which were denied. Subsequently, the Police Defendants filed notices of appeal to the United States Court of Appeals for the First Circuit in all matters, including the jury verdict and judgement. Notices of Appeal [Doc. Nos. 193, 197, 198].

## III. DISCUSSION

Prevailing parties are expressly authorized to seek attorneys' fees for claims under both Title VII and Chapter 151B of the Massachusetts General Laws. 42 U.S.C. § 2000e–5(k);[1] Mass. Gen. Laws.

---

1. "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k).

ch. 151B, § 9.[2] Because Dixon prevailed on claims under both Title VII and Chapter 151B, she is entitled to seek reasonable attorneys' fees and costs.[3] The district court has broad discretion to determine the reasonable fees and costs that should be awarded. *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 6 (1st Cir. 1993) (stating that in determining reasonable attorneys' fees, "the trial court's range of discretion is particularly broad").

■ In determining attorneys' fees, the First Circuit applies the "lodestar method". *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984); *McDonough v. City of Quincy*, 353 F.Supp.2d 179, 183 (D.Mass.2005) (applying the "lodestar method" in a Title VII attorneys' fees and costs action). Under the "lodestar" paradigm, the court must determine a lodestar figure by multiplying the number of hours productively expended by counsel by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This figure represents an initial estimate of reasonable fees which may be adjusted upward or downward on a case-by-case basis. *Id.* at 434, 103 S.Ct. 1933. There is a "strong presumption", however, that the lodestar figure reflects a reasonable assessment of fees to be awarded. *System Mgmt., Inc.*, 154 F.Supp.2d at

203–04 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 555, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Finally, the court determines the reasonable and necessary expenses that ought be awarded. *McDonough*, 353 F.Supp.2d at 184.

### A. Attorneys' Fees

1. Hours Reasonably Expended

■ In calculating the lodestar estimate, only hours that were reasonably expended on the litigation ought be included. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Under the framework of *Hensley*, the court may reduce the number of hours asserted by the prevailing party if documentation is inadequate or if effort put forth was "excessive, redundant, or otherwise unnecessary". *Id.* at 433–34, 103 S.Ct. 1933; *Grendel's Den, Inc.*, 749 F.2d at 950 (stating that "hours which were duplicative, unproductive, excessive, or otherwise unnecessary" should be subtracted from the number of hours actually invested). The First Circuit requires that the prevailing party must submit "detailed contemporaneous time records", the absence of which "will call for a substantial reduction in any award or, in egregious cases, disallowance." *Id.* at 952.

2. "If the court finds for petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust." Mass. Gen. Laws ch. 151B, § 9.

3. Defendant Flynn argues that the $25,000 in compensatory damages and $1 in punitive damages is a *de minimis* award that does not justify treating Dixon as the prevailing party or awarding her attorneys' fees against Flynn. Flynn & Local 382 Opp. Pl.'s Mot. for Att'ys' Fees and Costs [Doc. No. 187] ("Flynn/Local 382 Opp.") at 1 (citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 294 (1st

Cir.2001)). This argument fails because a plaintiff only needs to obtain "some relief on the merits; nominal damages will suffice." *System Mgmt., Inc. v. Loiselle*, 154 F.Supp.2d 195, 200 (D.Mass.2001) (internal quotation marks omitted), *rev'd on other grounds*, 303 F.3d 100 (1st Cir.2002); *see also Gay Officers Action League*, 247 F.3d at 293–94 (" '[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.' ") (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)).

Dixon was represented by lead counsel Inga S. Bernstein of the law firm of Zalkind, Rodriquez, Lunt & Duncan, LLP. Pl's Mot. ¶ 3. Dixon has submitted contemporaneous billing records of hours spent by the attorneys and staff on her case, Pl.'s Mot., Exs. A–D; Supplemental Aff. Bernstein Supp. Pl.'s Mot. Att'ys' Fees and Costs [Doc. No. 192] ("Second Bernstein Aff."), Exs. 1–3, and are summarized below in Table 1:

TABLE 1: Billed Hours and Fees

| Attorney Name | Hours Billed | Rate/ Hour | Total Amount |
|---|---|---|---|
| Inga S. Bernstein | 1,114.40 [4] | $300 | $334,320 |
| Elizabeth A. Lunt | 6.00 | $300 | $ 1,800 |
| William Van Lonkhuyzen | 11.75 | $300 | $ 3,525 |
| Monica Pastorok | 279.90 [5] | $200 | $ 55,980 |
| Jennifer Bills | 4.50 | $200 | $ 900 |
| Law Students | 341.30 [6] | $100 | $ 34,130 |
| Paralegal Bennett | 458.25 | $100 | $ 45,825 |
| **TOTAL** | 2,216.1 | | $476,480 [7] |

### a. Attorney Bernstein's Hours

Dixon asserts that Bernstein worked a total of 1,114.40 hours. Pl.'s Mot. ¶ 4; Second Bernstein Aff. ¶ 2. The Police Defendants contend that records submitted involve significant time on collateral administrative proceedings prior the filing of the present suit. Flynn/Local 382 Opp. at 6–8; Defs. IBPO and Leary's Opp. Att'ys' Fees [Doc. No. 189] ("IBPO/Leary Opp.") at 4–5. The Police Defendants argue that the hours submitted include "significant" time Bernstein spent representing Dixon

for administrative hearings before both the City of Lowell and the Massachusetts Civil Service Commission regarding the bus incident. *Id.* Dixon appeared as a witness before the Massachusetts Civil Service Commission for disciplinary hearings of individual officers from 1998 through 1999, as well as a hearing before the Lowell Retirement Board seeking disability retirement. Flynn/Local 382 Opp. at 7; IBPO/Leary Opp. at 4. In addition, Bernstein represented Dixon in the City of Lowell's investigation of perjured testimony given during the Disciplinary Hearings before the Massachusetts Civil Service Commission. *Id.* The Police Defendants assert that the documentation is vague as to what time was spent on these collateral matters and should not be assessed against them. *Id.* In reply, Bernstein claims that her representation of Dixon at these administrative hearings was "akin to representing her at her deposition and, in [Bernstein's] view, are appropriately compensable as part of this case" because Dixon's testimony in these administrative hearings was central to this case. Second Bernstein Aff. ¶ 6. The Court disagrees with Bernstein's "view".

A court is allowed to award attorneys' fees that properly cover work performed in administrative hearings that are prerequisites to federal court action. *North Carolina Dep't of Transp. v. Crest Street Cmty. Council, Inc.,* 479 U.S. 6, 10, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986) (citing

4. Dixon initially stated that Bernstein's hours billed were 1047.2 hours, Pl.'s Mot. ¶ 4, and later amended these hours to include 67.2 hours worked after the first motion for attorneys' fees and costs was submitted to the Court. Second Bernstein Aff. ¶ 2.

5. Pastorok's hours are a sum of 217.10 hours, Pl.'s Mot. ¶ 4, and subsequent 62.80 hours worked subsequent to the first motion, Second Bernstein Aff. ¶ 3.

6. These hours include the 330.80 hours of work done by law student Rachel Stroup, Pl.'s Mot. ¶ 4, Second Bernstein Aff. ¶ 3, and the 10.5 hours of work done law student Sam Sherry, Pl.'s Mot. ¶ 4.

7. After a careful review of the records submitted detailing the hours expended at the various billing rates, the Court concludes that the total attorneys' fees requested is $476,480, not $480,155. *See* Second Bernstein Aff. ¶ 5.

*New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 66, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) for identical language in Title VII administrative proceedings). Title VII provides that where the unlawful employment practice is alleged to have occurred in a state or locality which has a law prohibiting the practice, "no charge may be filed [with the Equal Employment Opportunities Commission ("EEOC")] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...." 42 U.S.C. § 2000e–5(c). Section 706(f)(1) requires the EEOC to give the complainant a "right to sue" letter if the EEOC itself does not sue within 180 days. *Id.* § 2000e–5(f)(1).

Dixon completed the necessary prerequisites under state and federal law prior to instituting this Title VII action in federal court. She filed a timely complaint with the Massachusetts Commission Against Discrimination (the "MCAD") on March 31, 1999 pursuant to Section 5, Chapter 151B of the Massachusetts General Laws. Compl., Ex. A. On October 12, 2000, the MCAD granted Dixon's request to withdraw her complaint to file a private law suit. *Id.,* Ex. B. On October 3, 2001, EEOC issued a "right to sue" letter thereby terminating the EEOC's right to pursue its charge and allowing Dixon to pursue her own private action. *Id.,* Ex. C.

■ Though the Court has the discretion to allow attorneys' fees for the hours documented in framing the MCAD complaint as the prerequisite to the federal Title VII suit, the Court will not use its discretion to allow for attorneys' fees and costs associated with the disciplinary and administrative hearings before City of Lowell and the Massachusetts Civil Service Commission. These proceedings were collateral matters not statutorily required to instigate the private Title VII suit. The Court does not agree that these hearings were "akin to representing" Dixon at her deposition even though the testimony in these hearings was used during the trial.

The billing records submitted by Dixon do not aid the Court in weeding out which hours were spent on these collateral hearings from the hours spent on the MCAD and Title VII complaint. Because Bernstein's documentation is inadequate and vague, the Court has subtracted the hours prior to October 18, 2001—the date the Title VII complaint was filed—which are not specifically attributed to the MCAD complaint or preparation of the Title VII complaint. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 (stating that district court may reduce the attorneys' fees award where there is inadequate documentation). In addition, all billing entries specifically referencing the City of Lowell or the Massachusetts Civil Service Commission will be subtracted from the total hours billed. After careful review, total hours billed by Bernstein is therefore reduced by 229.20 hours.

The Police Defendants contend that her hours ought be further reduced because of vague and undetailed entries on the billing records. *See* Flynn/Local 382 Opp. at 8–9 (citing phone calls or consultation with no indication or purpose or subject matter lack sufficient detail to be connected to this litigation); IBPO/Leary Opp. at 5 (referring to the "undetailed nature" of the submitted billing records). After review of these records, the Court holds that the entries of billing hours are sufficient to satisfy the heightened standard of detail required under *Grendel's Den* such that the records kept and submitted were contemporaneous and offered adequate detail. *Grendel's Den, Inc.,* 749 F.2d at 950–51. "Entries documenting phone calls to the client or drafting of letters require no more explanation to meet the standard."

*McDonough,* 353 F.Supp.2d at 184 (citing *Parker v. Town of Swansea,* 310 F.Supp.2d 376, 392 (D.Mass.2004) (Dein, M.J.)). Furthermore, documented phone calls with Dixon subsequent to the filing of the Title VII complaint are not "liberally peppered" throughout the billing records, and calls made to others are properly documented by name. *See Wilcox v. Stratton Lumber, Inc.,* 921 F.Supp. 837, 846 (D.Me.1996) (reducing award for billing records "liberally peppered with entries for 'legal research' and 'review file' ").

■ Defendants Local 382 and Flynn claim that excessive time was billed to "prepare for depositions" or work on oppositions to motions for summary judgment. Flynn/Local 382 Opp. at 9–10 (asserting that Bernstein billed over "103 hours involving deposition preparation and over 164 hours opposing motions for summary judgment"). After careful review, the Court concludes that Bernstein billed approximately 80 hours [8] on deposition preparation and depositions for eight individuals [9] prior to the commencement of the trial. *See* Pl.'s Mem. Supp. Summ. J. [Doc. No. 177] ("Pl.'s Mem."), Ex. 1 at 22–25 (detailing time spent from 10/20/02 thru 2/7/03 on deposition preparation and depositions). The Court does not consider an average of ten hours per individual on *both* deposition preparation and deposition attendance excessive. *See Wilcox,* 921

F.Supp. at 847 (concluding that ten hours spent on *only* deposition preparation as excessive and "over preparation"). The Court concludes that the time spent was reasonable and will not second guess counsel's necessary efforts to prepare, take, and defend the numerous depositions in this case.

■ With respect to the time billed for summary judgment opposition, the Court agrees that the time billed was excessive. The Court recognizes that opposition to the summary judgment motions was not a simple matter of crafting one opposition memorandum. This case involved five separate motions for summary judgment from the various defendants that included renewed motions for summary judgement.[10] Notwithstanding the number of responses required, the Court concludes that an average of 32.8 hours billed for each of the motions for summary judgment is excessive, especially when the records make it impossible to separate out entries that combine work on opposition to summary judgment with other tasks. *See, e.g.,* Pl.'s Mem. Ex. 1, Billing Entry 3/3/03 (claiming 3.8 hours for "Research DFR/Title VII issue for opposition on SJ, work on opposition. Confer with Court, opposing counsel re: hearing on motion to compel. Write counsel."). Because of inadequate billing records and excessive time, the Court will reduce the billed time by 64

---

8. The hours differ from the Defendants Local 382 and Flynn's asserted hours because the Court did not include any deposition time billed prior to the date the Title VII complaint was filed.

9. The billing records indicate time spent on depositions for Pender, Pl.'s Mot., Ex. 1 at 11/26/02; Leary, *id.* at 1/10/03; Moriearty, *id.* at 1/13/03; Koller, *id.;* Flynn, *id.* at 1/30/03; Lucek, *id.* at 1/31/03; Fuller, *id.;* Dixon, *id.* at 2/6/03.

10. Bernstein submitted opposition memoranda for motions for summary judgement from

Flynn and Local 382 on 4/17/03 [Doc. No. 46]; Lyons on 4/25/03 [Doc. No. 51]; and Leary and Pender on 4/25/03 [Doc. No. 53]. All of these motions for summary judgment were denied without prejudice to filing a new motion for summary judgment "when circumstances support an immediate ruling". Doc. Report, 9/10/03 (Keeton, J.). All defendants refiled motions for summary judgment. [Doc. Nos. 71, 72, 66]. Bernstein filed two new opposition memoranda to the renewed motions for summary judgment. [Doc. Nos. 75, 77].

hours, allowing for 100 hours total time billed for opposition to summary judgment. *See Wilcox,* 921 F.Supp. at 846 (holding that thirty-five hours spent by two attorneys on response to summary judgment motion in a Title VII case as excessive).

The Court declines to reduce the hours Bernstein billed for media-related and travel time. After the Title VII complaint was filed, there are no entries for media-related tasks. Any media-related tasks prior to October 18, 2001 have been deducted by removing time billed for collateral administrative hearings. Also, no reduction will be taken for time spent performing clerical duties. *See* Flynn/Local 382 Opp. at 10. Defendants Flynn/Local 382 do not cite any billing entries that involve Bernstein performing clerical tasks and, after review, the Court does not find any hours billed by Bernstein for clerical tasks.

The Court will reduce the hours billed for travel by two hours for a trip to Lowell associated with the internal affairs investigation that was collateral to the Title VII case. Pl.'s Mem., Ex. 1, Billing Entry 6/11/02. Any travel hours billed prior to October 18, 2001 were deducted when the Court subtracted time billed for collateral administrative hearings. The Court will not take any further reductions for travel since there are only two entries billed for travel between Boston and Nashville for a deposition related to the Title VII suit. *Id.* at Billing Entries 12/15/02, 12/16/02; *see also Horney v. Westfield Gage Co.,* 227 F.Supp.2d 209, 216 (D.Mass.2002) (Neiman, M.J.) (reducing hourly rate, not hours, for travel time).

In summary, the Court will reduce Bernstein's hours by 295.20 hours, resulting in 819.20 hours reasonably expended by Bernstein.

b. Hours Claimed by Other Staff

■ Defendants Flynn and Local 382 contend that hours claimed by Attorney Pastorok, paralegal Bennett, and law student Stroup ought be significantly reduced. Flynn/Local 382 Opp. at 11–13. With respect to Pastorok, Flynn and Local 382 argue that her hours billed ought be reduced because a significant portion of her time, approximately 90 hours, involved her attendance at trial and conferring with Attorney Bernstein. *Id.* at 11. In general, " 'the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted.' " *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir. 1992) (quoting *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (internal quotation marks omitted)). "[S]taffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncracies." *Id.* at 939. It is not unreasonable to expect that an attorney assisting in a trial would want to attend trial and conference with the lead attorney to assist lead counsel to shape the litigation as it progresses. *McDonough,* 353 F.Supp.2d at 185.

Given the complex nature of this case, the Court concludes that it was reasonable and necessary for Pastorok to attend and confer with Bernstein throughout the trial. After review of the billing records, the Court concludes that Pastorok did not spend time duplicating the work of Bernstein, as a bulk of Pastorok's work involved hours preparing witnesses, direct and cross-examination with Bernstein as second chair at the trial, and drafting memoranda of law that were not handled by Bernstein. *See* Pl.'s Mem. Ex. D, Pastorok Aff. ("Pastorok Aff."). The Court will deduct 15.10 hours [11] for the time Pastorok spent waiting at the courthouse for

---

11. *See* Pastorok Aff., Billing Entries 10/17/05 and 10/18/05.

the jury verdict, as it is excessive for both attorneys to be present during jury deliberations. *See Alfonso v. Aufiero*, 66 F.Supp.2d 183, 193 (D.Mass.1999) (Saris, J.) (eliminating 62.6 hours spent waiting in the courthouse for the jury's verdict because "[c]ounsel were free to leave and/or work on matters for other clients during that time"). In addition, the Court will reduce Pastorok's hours by 1.3 hours spent "[p]articipating in interview of client by Lowell Sun". Pastorok Aff., Billing Entries 10/31/05; *Parker*, 310 F.Supp.2d at 393 (denying award of attorneys' fees for "media-related time to individual civil rights plaintiffs"). In summary, Pastorok's time will be reduced by 16.4 hours.

■ In addition, defendants Flynn and Local 382 argue that 458.25 hours of work by paralegal Bennett should be denied or significantly reduced because of vague time records regarding the nature of the time claimed. Flynn/Local 382 Opp. at 11–12. The Court agrees that the undetailed and general billing entries and duplicative work warrant a significant reduction of hours billed by Bennett. *See Wilcox*, 921 F.Supp. at 846 (finding that several undetailed and unrealistic entries were indicative of excessive billing). Flynn and Local 382 correctly bring to the Court's attention significant hours billed under the general headings "material facts" and "trial prep". It is not reasonable for Bennett to charge time spent preparing for and attending depositions or reviewing summary judgment motions and opposition memoranda that were also billed by Pastorok and Bernstein. *See* Pl.'s Mem., Ex. 3, Billing Statement for Bennett; *McDonough*, 353 F.Supp.2d at 185 ("[It] is not reasonable to allow [the Defendant] to be billed for hours that were spent duplicating the work of another.") Furthermore, billing entries between December 9, 2003 and December 22, 2003, list one "Megan G." as part of the billed task. *See* Pl.'s Mem., Ex. 3, Billing Statement for Bennett. Because neither Bennett nor Bernstein explain who "Megan G." is or how she relates to Bennett's work, the Court will subtract all billed hours that reference "Megan G." Therefore, the Court will subtract 237.20 hours from Bennett's claimed 458.25 hours, resulting in 221.05 hours reasonably expended by Bennett.

Similarly, the Court agrees with Flynn and Local 382 that the 330.80 hours claimed on behalf of law student Rachel Stroup should be reduced. For the reasons discussed above, the hours claimed for trial attendance and hours during jury deliberations are excessive, as both Bernstein and Pastorok attended the entire trial. *See* Pl.'s Mem., Ex. 3, Billing Statement for Stroup (29.05 hours billed by Stroup attending trial or awaiting jury verdict). Additionally, the hours billed for cross examinations and trial preparation are duplicative of the work completed by Pastorok and will be subtracted. *Id.* (51 hours billed by Stroup for witness preparation and general trial preparation for the same dates billed by Pastorok for the same tasks). Therefore, the Court will subtract 80.05 hours from Stroup's claimed 330.80 hours, resulting in 250.75 hours reasonably expended by Stroup.

### c. Hours for Unsuccessful Claims

■ Defendants IBPO and Leary claim that the total hours billed should be reduced for the claims on which the defendants IBPO and Leary prevailed. IBPO/Leary Opp. at 3. The jury returned a verdict for the IBPO and Lyons on the Dixon's defamation claims and for Leary and Pender on her assault claims. Jury Ver. "[T]he Court is not obliged to discount for the unsuccessful plaintiffs and claims." *System Mgmt., Inc.*, 154 F.Supp.2d at 209. Although not all of the claims were successful, the Court concludes that all of the claims and all of the defendants were interconnected with the

common core of facts that ultimately furnished the basis for the successful claim. Thus, the Court will not use its discretion to reduce billed hours because the core facts and the successful core theory dominated the litigation from start to finish.

### d. Summary of Hours Reasonably Expended

The Court has reduced the number of hours asserted by the prevailing party because of inadequate or vague documentation and duplicative or excessive billing hours. *See Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933; *Grendel's Den, Inc.*, 749 F.2d at 950 (stating that "hours which were duplicative, unproductive, excessive, or otherwise unnecessary" should be subtracted from the number of hours actually invested). Table 2 summarizes the hours that were reasonably expended on the litigation in calculating the lodestar estimate.

**TABLE 2: Allowed Hours**

| Attorney Name | Hours Billed | Reduction | Hours Allowed |
|---|---|---|---|
| Inga S. Bernstein | 1,114.40 | (295.20) | 819.20 |
| Elizabeth A. Lunt | 6.00 | 0 | 6.00 |
| William Van Lonkhuyzen | 11.75 | 0 | 11.75 |
| Monica Pastorok | 279.90 | (16.40) | 263.50 |
| Jennifer Bills | 4.50 | 0 | 4.50 |
| Law Students | 341.30 | (80.05) | 261.25 |
| Paralegal Bennett | 458.25 | (237.20) | 221.05 |
| **TOTAL** | **2,216.1** | **(628.85)** | **1,587.25** |

### 2. Reasonable Hourly Rates

 After the reasonable time expended has been determined, the court is to multiply the number of hours by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. To determine a reasonable hourly rate, this Court must find the prevailing hourly rate for attorneys with similar skill, experience, and reputation in the Boston area, irrespective of the private or nonprofit nature of counsel. Dixon, the party requesting fees, has a two-part burden: (1) to establish the experience and skill of her lawyers; and (2) to inform the Court of the prevailing market rate in the community for attorneys with such qualifications. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (asserting that reasonable fees in a federal civil rights action under Title 42, Section 1988 of the United States Code are to be calculated according to the prevailing market rate in the relevant community, regardless of whether counsel is private or nonprofit); *Martino v. Massachusetts Bay Transp. Auth.*, 230 F.Supp.2d 195, 205 (D.Mass.2002) (applying the approach discussed in *Blum* to a request for attorneys' fees by a prevailing party under Title VII).

Attorney Bernstein requests an hourly rate of $300.00 as lead counsel. Pl.'s Mem., Ex. A Bernstein Aff. ("Bernstein Aff.") ¶ 14. In support of the requested rate, Bernstein provides her own affidavit detailing her experience as a lawyer and also submits four affidavits attesting to the prevailing market rates for civil rights attorneys and Bernstein's skills and accomplishments.[12] To demonstrate further the reasonableness of the hourly rate requested, Bernstein has submitted comparative fee information from the "100 Largest Law Firms in Massachusetts" published in Lawyers Weekly, which includes the hourly billing rates for several listed firms, not

---

**12.** *See* affidavits from: (1) Norman S. Zalkind, a senior partner in the law firm Zalkind, Rodriguez, Lunt & Duncan LLP, Pl's Mot. ¶ 6; Ex. E (Aff. of Norman S. Zalkind); (2) Nancy S. Shilepsky, a partner in the law firm Shilepsky O'Connell Casey Hartley Michon Yelen LLP, Pl's Mot. ¶ 7; Ex. F (Aff. of Nancy S. Shilepsky); (3) Jean A. Musiker, a partner in the law firm Sugarman, Rogers, Barshak & Cohen P.C., Pl's Mot. ¶ 9; Ex. G (Aff. of Jean A. Musiker); and (4) Shannon Liss–Riordan, a partner in the law firm Pyle, Rome, Lichten, Ehrenberg & Liss–Riordan, Pl.'s Supplement Mot., Ex 1 (Aff. of Shannon Liss–Riordan).

including Bernstein's firm, Zalkind, Rodriquez, Lunt & Duncan, LLP. Pl.'s Mot., Ex. K.

Attorney Pastorok requests an hourly rate of $200.00 as assisting counsel. Pl.'s Mem. ¶ 4. Pastorok submits an affidavit briefing her experience as counsel in Massachusetts in support of the rate requested. *Id.* Ex. D, Aff. of Monica Pastorok ("Pastorok Aff."). Attorneys Elizabeth Lunt and William Van Lonkhuyzen request an hourly rate of $300.00 and submit affidavits in support which discuss their educational background and experience. Pl's Mot. ¶ 4; Ex. B, Aff. of Elizabeth Lunt ("Lunt Aff."); Ex. C, Aff. of William Van Lonkhuyzen ("Lonkhuyzen Aff."). Attorney Jennifer Bills requests an hourly rate of $200.00 as an associate. Pl.'s Mem. ¶ 4. Paralegal Gretchen Bennett and law students Rachel Stroup and Sam Shepard request an hourly rate of $100.00. *Id.*

In response, Defendants Local 382 and Flynn argue that the rates requested are excessive and are not in accord with recent rates awarded by the District of Massachusetts. In support, Local 382 and Flynn cite several cases dating from 1997 to 2005 and note that in all cases listed, the hourly rate awarded is far below those requested. Flynn/Local 382 Opp. at 3. The Court will discuss the rates proposed for each of the attorneys to determine a reasonable hourly rate.

### a. Attorney Inga S. Bernstein

■ Bernstein has submitted an affidavit which reveals an impressive and lengthy background in employment law. *See* Bernstein Aff. Prior to practicing law, Bernstein was the Assistant Director for the Boston Fair Housing Commission enforcing state and local anti-discrimination laws. *Id.* ¶ 6. After graduating *cum laude* from Harvard Law School, Bernstein was admitted to the practice of law in Massachusetts in 1995 and has represented "numerous plaintiffs" in employment discrimination and retaliation cases since the beginning of her legal career. *Id.* ¶ 5. She has practiced in both criminal and civil cases and has settled four employment cases through mediation in the "six-figure range". *Id.* ¶ 8.

Local 382 and Flynn argue that $300.00 hourly rate requested by Bernstein as the lead counsel ought be rejected because it is not the rate that she charged for the majority of the billing period claimed in Dixon's Motion for Attorneys' Fees and Costs. Flynn/Local 382 Opp. at 4. The Court has the discretion to use current, rather than historic, hourly rates in determining a reasonably hourly rate. *See Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed.... [A]n appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the [civil rights] statute."). Based on the length and complexity of this case, the Court will use a current market hourly rate for Bernstein.

In addition, Defendants IBPO and Leary contend that the hourly rates requested should be reduced in relation to time spent on "non-core" work. IBPO/Leary Opp. at 5. The First Circuit has suggested that a court should "filter out the 'non-core' (i.e., less lawyerly) work from the 'core' (i.e., more lawyerly) work, and compensate the 'non-core' work at two-thirds the reasonable hourly rate for 'core' work." *System Management,* 154 F.Supp.2d at 201 (citing cases). While this Court initially followed the "core" versus "non-core" distinction, *id.* at 209 n. 2, the

Court changed its approach in *System Management* and determined that once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and that "additional tinkering merely serves to double count some factors." *Id.* at 209. IBPO and Leary argue that the Court's eliminating the "core" versus "non-core" distinction in *System Management* ought be limited to attorneys' fee awards under the RICO Act. IBPO/Leary Opp. at 5. This Court's recent decision in *Mogilevsky v. Bally Total Fitness Corp.*, however, demonstrates that this Court has expanded its view beyond RICO by refusing to apply a "core" versus "non-core" distinction in an attorneys' fees award for a discrimination suit under the Age Discrimination in Employment Act. *Mogilevsky v. Bally Total Fitness Corp.*, 311 F.Supp.2d 212, 217 (D.Mass.2004). The Court will continue not to recognize the distinction between "core" versus "non-core" work by establishing one reasonable rate to apply to the lodestar calculation.

Taking into account Bernstein's ten years of experience in employment law, the length, complexity, and outcome of the case, the rates awarded to civil rights attorneys in the Boston area recently, and the affidavits attesting to Bernstein's impressive skills and accomplishments, the Court concludes that $250.00 is a reasonable hourly rate. "While prior cases do not necessarily provide precedent regarding the reasonableness of the fees awarded, they nevertheless provide a reflective picture of what is happening in the market." *McDonough*, 353 F.Supp.2d at 188 (citing *System Mgmt., Inc.*, 154 F.Supp.2d at 210). The case law confirms that $250.00 is a reasonable hourly rate for an attorney in Boston with experience comparable to that of Bernstein. *See, e.g., McDonough*, 353 F.Supp.2d at 188 (awarding $200.00 to attorney with over eleven years

in the relevant field); *Martino*, 230 F.Supp.2d at 205–06 (awarding $200.00 as hourly rate for civil rights attorney); *System Mgmt., Inc.*, 154 F.Supp.2d at 210 (approving an hourly rate of $235.00 for an attorney with twenty-four years of experience and an hourly rate of $200.00 for an attorney with eleven years experience); *Ciulla v. Rigny*, 89 F.Supp.2d 97, 104 (D.Mass.2000) (awarding civil rights attorney hourly rate of $200.00); *Alfonso v. Aufiero*, 66 F.Supp.2d 183, 197 (D.Mass. 1999) (Saris, J.) (awarding civil rights attorney an hourly rate of $250.00).

### b. Attorney Monica Pastorok

Pastorok requests an hourly rate of $200.00 as second chair. Pl.'s Mem. ¶ 4. Pastorok graduated from New York University Law School in 1984 and has been practicing in Massachusetts since 2001. Pastorok Aff. ¶¶ 1, 3. She practiced corporate law for five years in New York with the law firm of Wilkie Farr & Gallagher. *Id.* ¶ 6. Pastorok avers that she performed "extensive trial preparation" and legal research and wrote submissions for this suit since 2004. *Id.* ¶ 8.

Pastorok's experience in employment law is substantially less than that of Bernstein. While Bernstein has spent ten years concentrating in the employment field, Pastorok does not indicate that she has spent the majority of her time employment and discrimination cases. *See id.* ¶ 7 (indicating that Pastorok has "represented numerous plaintiffs in employment harassment, discrimination, and retaliation cases" without further elaboration). Furthermore, Bernstein has been admitted to practice in Massachusetts for a longer period. In light of this comparison, it seems reasonable to compute Pastorok's rate at about 30 percent less than the rate awarded to Bernstein. The Court therefore concludes that a reasonable hourly rate for Pastorok is $175.00. *See McDonough*, 353

F.Supp.2d at 188 (awarding assist counsel a rate of about 25 percent less than the rate awarded lead counsel).

### c. Attorneys Lunt and Van Lonkhuyzen

■ Lunt and Van Lonkhuyzen submitted affidavits describing their educational background and experience to support their requested hourly rate of $300.00. *See* Lunt Aff.; Lonkhuyzen Aff. While both Lunt and Van Lonkhuyzen have impressive credentials and experience,[13] Dixon fails the second part of her burden to inform the Court of the prevailing market rate in the community for attorneys with such qualifications. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There is no indication of how much specialized experience Lunt and Van Lonkhuyzen have with employment and discrimination suits. *See* Lunt Aff. ¶ 6; Lonkhuyzen Aff. ¶ 6 (stating that they have "handled employment discrimination and harassment cases"). Due to the limited amount of hours spent on this suit[14] and lack of supporting information, the Court concludes that $150.00 is a reasonable hourly rate. *See McDonough,* 353 F.Supp.2d at 188 (awarding a rate of $150.00 for assistant counsel for the less substantial work performed).

### d. Attorney Jennifer Bills

Bills was an associate in Bernstein's firm and worked 4.5 hours conducting research and proofreading memoranda for this suit. Bernstein Aff. ¶ 15; Pl.'s Mot., Ex. 1. Bills graduated from Northeastern Law School in 2001 and is member of both the New York and Massachusetts bars. *Id.* Because of her limited experience and the nature of the work conducted for this suit, it is reasonable to use a $100 hourly rate for the work Bills performed.

### e. Paralegal Bennett and Law Students

Dixon claims a rate of $100.00 per hour for paralegal Gretchen Bennett and law students Rachel Stroup and Sam Sherry. Pl.'s Mem. ¶ 4. Bennett graduated from George Washington University with a B.A. in 1991 and has worked as a paralegal since 1999. Bernstein Aff. ¶ 15. She spent significant time reviewing testimony, working on summary judgment motions, and preparing for trial. *Id.* Stroup was a third-year law student from Northeastern University and spent numerous hours preparing witnesses, researching, and writing for this suit. *Id.* Sherry was a first-year law student who provided limited assistance at the early stages of the trial. *Id.*

■ Defendants Local 382 and Flynn contend that the Court should summarily reject the Plaintiff's claim for non-lawyer fees because there is no evidence of what was actually paid to the paralegals and law students. Flynn/Local 382 Opp. at 11. Though there is precedent that supports this argument, this Court has awarded paralegals and law students fees based on hours billed and not what was actually paid to the law student. *See Martinez v. Hodgson,* 265 F.Supp.2d 135 (D.Mass.2003) (awarding $60.00 per hour as an appropriate rate for an unidentified number of law students in a civil rights suit). *But cf. McLaughlin by McLaughlin v. Boston School Comm.,* 976 F.Supp. 53, 67 (D.Mass.1997) (Garrity, J.) (holding "[w]here a plaintiff applies for fees for

---

13. Lunt graduated *cum laude* from Harvard Law School, has been practicing law since 1978, and has been a partner at Zalkind, Rodriguez, Lunt & Duncan LLP since 1991. Lunt Aff. ¶¶ 1, 2, 4. Van Lonkhuyzen graduated from University of Chicago Law School, with honors, has been practicing law since 1996 in Massachusetts, and has been partner at Zalkind, Rodriguez, Lunt & Duncan LLP since 2001. Lonkhuyzen Aff. ¶¶ 1, 2, 4.

14. Lunt and Van Lonkhuyzen spent a total of 17.75 hours on this suit. *See* Lunt Aff.; Lonkhuyzen Aff.

work performed by non-lawyers, any award for this work is limited to the amount of money actually paid to them"). Taking into account the rates awarded to paralegals in the Boston area recently and the substantive nature and amount of work performed, the Court concludes that $60.00 is a reasonable hourly rate for the paralegal and law students.

### 3. Lodestar Calculation

The Court calculates the lodestar figure by multiplying the number of hours productively expended by counsel by a reasonable hourly rate determined. Table 3 summarizes the lodestar calculation:

TABLE 3: Lodestar Calculation of Attorneys' Fees

| Attorney Name | Hours Allowed | Allowed Rate/Hour | Total |
|---|---|---|---|
| Inga S. Bernstein | 819.20 | $250 | $204,800.00 |
| Elizabeth A. Lunt | 6.00 | $150 | $ 900.00 |
| William Van Lonkhuyzen | 11.75 | $150 | $ 1,762.50 |
| Monica Pastorok | 263.50 | $175 | $ 46,112.50 |
| Jennifer Bills | 4.50 | $100 | $ 450.00 |
| Law Students (Stroup) | 261.25 | $ 60 | $ 15,675.00 |
| Paralegal Bennett | 221.05 | $ 60 | $ 13,263.00 |
| **TOTAL** | **1,587.25** | | **$282,963.00** |

### 4. Lodestar Departure

"Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett,* 975 F.2d at 937. Defendants Local 382 and Flynn argue that the fees should be reduced because Dixon did not prevail on all claims originally presented to the Court and the fees are excessive. *See* Local 382/Flynn Opp. at 13–14. Dixon argues that the lodestar amount should be enhanced because of difficulties during the discovery process. Pl.'s Mem. at 3. The Court finds that neither of these arguments are sufficiently persuasive to override the "strong presumption" that the lode-

star figure reflects a reasonable assessment of fees to be awarded. *System Mgmt., Inc.,* 154 F.Supp.2d at 203–04.

The Court may exercise its "authority to adjust the lodestar" only "in accordance with accepted principles." *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 (1st Cir.1997) (citing *Hensley,* 461 U.S. at 429–31, 103 S.Ct. 1933). The results obtained are a significant factor to be considered in determining reasonable fees to be awarded. *Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933. In *Coutin,* the First Circuit explained that the meaning of "results obtained" includes (1) "a plaintiff's success claim by claim"; (2) "the relief actually achieved"; and (3) "the societal importance of the right which has been vindicated." *Coutin,* 124 F.3d at 338. Based on its analysis of these three factors, the Court concludes no adjustment will be made to the lodestar amount.

With respect to claim-by-claim success, as previously discussed, the Court concludes that all of the claims and all of the defendants were interconnected with the common core of facts that ultimately furnished the basis for the successful claim. "Where a plaintiff has obtained excellent results ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 (citation omitted). Also, it cannot be disputed that Dixon actually achieved substantial relief. Jury Ver. (awarding $2,232,501 in total damages against four of the six defendants).

Finally, the verdict obtained in this case is of some public significance. The jury awarded punitive damages against police labor union officials and a labor union for the City of Lowell, potentially putting the labor union and the community on notice of the need for thorough investigations of alleged police and union discriminatory

and retaliation practices. To the extent that the award has a deterrent effect on other officers, it constitutes a measure of success for Dixon here. Though this argument favors of an upward departure from the lodestar amount, Dixon makes no argument on this point and relies solely on discovery difficulties as a basis for enhancement to the lodestar amount. Pl.'s Mem. at 3. Deposition scheduling difficulties and volume of discovery do not warrant an enhancement of the lodestar amount. Therefore, no adjustment will be made to the lodestar amount for attorneys' fees.

## B. Costs

 Dixon seeks costs in the amount of $33,742.19. Bernstein Aff. ¶ 17; Second Bernstein Aff. ¶ 4. The costs listed generally included copying fees, telephone, mileage and postage charges, deposition costs, faxes, and parking. Pl.'s Mot., Ex. 6. Defendants Flynn and Local 382 assert that the costs are excessive and inadequately documented. Local 382/Flynn Opp. at 14. After careful review, the Court agrees that the costs are excessive because Dixon claims costs for dates prior to the filing of the Title VII suit. *See* Pl.'s Mot., Ex. 6 at 2–18 (detailing cost entries from 1/12/99 until 10/18/01). Because the cost entries are general, vague, and are not clearly attributable to collateral administrative hearings or the Title VII suit, the Court will reduce the cost amount by 30 percent. This is a reasonable deduction, as Dixon documents six years of costs from January 12, 1999 until February 13, 2005. Bernstein Aff. ¶ 17; Second Bernstein Aff., Ex. 4. The period from January 12, 1999 until October 18, 2001 (date of the Title VII complaint) represents about one-third of the total time. Therefore, the Court will only award $23,619.53 for costs associated with the Title VII suit.

## C. Apportionment of Attorneys' Fees between Parties

Last, Defendants Local 382 and Flynn argue that they should each be apportioned but a minimal percentage of the attorneys' fees and costs approved by the Court. Local 382/Flynn Opp. at 15. The jury found both Flynn and Local 382 liable for slightly more than 1 percent of the total damages awarded. *Id.* Defendants Local 382 and Flynn suggest that any award of fees and costs against either of them should be tied to their individual percentage of the total damages awarded by the jury. *Id.*

The law concerning apportionment of fees assessments remains relatively unsettled in the First Circuit. *Grendel's Den,* 749 F.2d at 959. In the Third Circuit, "[i]t is a well-established principle that when multiple defendants are held to be liable in a civil rights action, the proper course of action for a district court is to allocate responsibility for the payment of fees among the responsible parties." *Coleman v. Kaye,* 87 F.3d 1491, 1510 (3d Cir.1996). In deciding the proper allocation of attorneys' fees, the district court "should make every effort to achieve the most fair and sensible solution that is possible." *Grendel's Den,* 749 F.2d at 960.

 In general, a district court in the exercise of its discretion ought appraise the respective roles of all the defendants and their participation in this complex litigation. *McDonald v. Bowen,* 693 F.Supp. 1298, 1305 (D.Mass.1988) (Garrity, J.). This type of analysis is similar to determining the reasonable hours expended on successful and unsuccessful claims. The Court has noted the Dixon's claims for relief involved a common core of facts and related legal theories. Much of the counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-

claim basis. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). In addition, the Court has the discretion to award attorneys' fees and costs that exceed the actual damage award. See *Martino*, 230 F.Supp.2d at 206 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 564–581, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (upholding an award of attorneys' fees for $245,456.25 for plaintiffs who had received a jury award of $33,350)).

With respect to Flynn, the Court takes into account the relatively small damage assessed against Flynn ($1 in punitive damages and a portion of $2,500 as compensatory damages upon the discrimination claim) and the fact that only one claim against Flynn was brought before the jury. Therefore, the Court concludes that Flynn should be required to pay one percent the attorneys' fees and costs awarded to Dixon.

With respect to Local 382, the Court takes into account the relatively smaller damage assessed against Local 382 as opposed to IBPO and Leary ($25,000 in punitive damages and a portion of $2,500 as compensatory damages upon the discrimination claim). Unlike Flynn, Local 382 was defending against both the discrimination and retaliation claims. Therefore, the Court concludes that Local 382 shall be required to pay ten percent of the attorneys' fees and costs awarded to Dixon.

Due to the substantial award assessed against the defendants IBPO and Leary and their failure to submit any argument opposing apportionment, the Court concludes that IBPO and Leary shall be required to pay the remaining 89 percent of the attorneys' fees and costs awarded to Dixon.

## IV. CONCLUSION

For the reasons expressed above, Dixon's motion for attorneys' fees and costs are ALLOWED as modified by the Court. The total attorneys' fees and costs awarded to Dixon is $306,582.53. Defendant Flynn is required to pay $3,065.83, Local 382 is required to pay $30,658.25, and IBPO and Leary, jointly and severally, are required to pay $272,858.45 of the attorneys' fees and costs.

SO ORDERED.