**John WALSH**

v.

**BOSTON UNIVERSITY.**

**Civil Action No. 04–11240–RGS.**

United States District Court,
D. Massachusetts.

Sept. 28, 2009.

Shannon E. Liss–Riordan, Harold L. Lichten, Leah M. Barrault, Lichten & Liss–Riordan, P.C., Boston, MA, for John Walsh.

Lawrence S. Elswit, Boston University Office Of General Counsel, Crystal D. Talley, Boston University, Boston, MA, for Boston University.

*MEMORANDUM AND ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING ATTORNEYS' FEES AND COSTS*

STEARNS, District Judge.

As I noted in a September 11, 2009 Memorandum and Order adopting Magis-

trate Judge Bowler's Recommendation with regard to the underlying dispute, this case, despite its superficial modesty, has a long and complex factual history. One might argue that this is not the sort of dispute that attorneys should be rewarded for pursuing to the bitter end (particularly in a case like this where neither side is without fault), as under the "American rule," parties are ordinarily expected to bear their own attorneys' fees. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). But in cases brought under the Americans with Disabilities Act, as well as the Family Medical Leave Act, Congress has decreed a different result. Under these statutes, fee-shifting is the law, not the exception, so long as the prerequisites of *Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), are met.[1] Here the Magistrate Judge concluded that plaintiff John Walsh is a "prevailing party" within the meaning of *Buckhannon*, and thus entitled to an award of attorneys' fees. I agree with her determination that the *Buckhannon* conditions have been satisfied: there has been a court-ordered "material alteration of the legal relationship of the parties," that order has been reduced to an enforceable judgment, and the judgment has been approved by the court. *See Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835. I also agree with the amount of the Magistrate Judge's proposed fee award. I have reviewed the fee petition and the hourly rates billed by counsel with care. I commend the Magistrate Judge for her careful paring of

billings she deemed excessive, especially given her intimate familiarity with the convolutions of the litigation as demonstrated in her prior Report and Recommendation. She also appropriately reduced the requested lodestar amount of $103,035 by 30 percent, finding that Walsh had achieved a "limited (though not insubstantial)" success. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 339 (1st Cir.1997). The Recommendation of an award of attorneys' fees in the amount of $72,124.50 and costs of $4,209.53 is therefore *ADOPTED*. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

## REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS (DOCKET ENTRY # 48)

BOWLER, United States Magistrate Judge.

Presently pending before this court is a renewed motion for attorney's fees and costs filed by plaintiff John Walsh ("plaintiff"). (Docket Entry # 48). The motion raises an issue of first impression in this circuit regarding whether plaintiff, who obtained a Rule 68, Fed.R.Civ.P. ("Rule 68"), judgment in the amount of $15,000 in his favor, is a "prevailing party" within the meaning of the American Disabilities Act, 42 U.S.C. § 12205 ("ADA"). In addition to the ADA, plaintiff seeks a fee award under the Family Medical Leave Act, 29 U.S.C. §§ 2601 et *seq.* ("FMLA"), and Massachusetts General Laws chapter 151B, section 9 ("chapter 151B").

---

**1.** As the Magistrate Judge found, the First Circuit's decisions in *Aronov v. Napolitano*, 562 F.3d 84, 89 (1st Cir.2009), and *Smith v.* *Fitchburg Pub. Sch.*, 401 F.3d 16, 22 (1st Cir.2005), provide useful guidance in applying *Buckhannon*.

## BACKGROUND[2]

Plaintiff, a former employee in the Office of Housing at Boston University, worked as Operations Manager, Residential Safety. Because of health conditions, including post traumatic stress disorder and depression, plaintiff missed a number of work days in 2001. He alleges that defendant Boston University ("defendant") did not make a reasonable accommodation of his disability in violation of the ADA or provide him with required leave time under the FMLA.

During his employment, plaintiff's supervisor allegedly harassed him not only because plaintiff took time off from work but also because he refused to terminate a handicapped employee and filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). (Docket Entry # 1, ¶ 1). In November 2001, defendant terminated plaintiff.

The complaint alleges five causes of action against defendant for violating the FMLA (Count I), chapter 151B (counts II and III), section 103 of Massachusetts General Laws chapter 93 ("chapter 93") (Count IV) and the ADA (Count V). In addition to other forms of relief, the complaint seeks "Attorney's fees and costs." (Docket Entry # 1).

In January 2005, the court issued a ruling on defendant's motion to dismiss (Docket Entry # 4). The court allowed the motion as to Count IV because "[c]hap-ter 151B is the exclusive remedy for employment discrimination claims" and denied the motion as to the remaining counts. In January 2007, the court denied defendant's motion for summary judgment (Docket Entry # 17) thereby leaving the parties' legal relationship unchanged.[3] As a result of these rulings, only the FMLA, chapter 151B and ADA claims remain.

In March 2007, plaintiff filed the first of two. motions for attorney's fees and costs. (Docket Entry # 33). One month later, defendant filed a motion "for relief of judgment" seeking to avoid the consequences of plaintiff's acceptance of defendant's $15,000 offer of judgment under Rule 68. (Docket Entry # 37). The March 6, 2007 Rule 68 offer of judgment sent to plaintiff's counsel, captioned "OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68," reads as follows:

> Trustees of Boston University, Defendant herein, offers to allow judgment to be taken against it in the sum of Fifteen Thousand Dollars ($15,000.00). This Offer is made pursuant to the provisions of Rule 68 of the Federal Rules of Civil Procedure and will be deemed withdrawn unless Plaintiff and/or his attorney serves written notice of acceptance within ten (10) days of the date this Offer was served on you. This Offer is not to be construed either as an admission of liability or that Plaintiff has suffered any damage as a result of the acts or omissions of Defendant.

---

2. Although the procedural background duplicates to a degree prior report and recommendations, this court repeats the background relevant to this opinion for ease of reference. The factual background relative to the hourly rates and time is set forth in the discussion section.

3. The court's dismissal of one count in the five count complaint and denial of defendant's summary judgment motion does not make plaintiff a prevailing party. *Hewitt v.*

*Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (obtaining "interlocutory ruling that his complaint should not have been dismissed" under Rule 12(b)(6) "is not the stuff of which legal victories are made"); *see Sole v. Wyner,* 551 U.S. 74, 83, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007) ("[p]revailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case").

(Docket Entry # 31). On Friday, March 16, 2007, plaintiff timely accepted the offer by filing the offer of judgment (Docket Entry # 31) and a notice of acceptance (Docket Entry # 32) with the court in conformity with Rule 68.

In August 2007, this court held a hearing on the first motion for attorney's fees (Docket Entry # 33) and the motion for relief from the "judgment" (Docket Entry # 37).[4] One month later, this court issued a Report and Recommendation. (Docket Entry # 44).

As explained in the opinion (Docket Entry # 44, pp. 16–17), the three underlying statutes did not expressly include attorney's fees as part of "costs." *Cf. Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (if underlying statute defines "costs" to include attorney's fees, then the term "costs" in Rule 68 will include such fees). By accepting the offer, plaintiff thereby avoided the implications of the *Marek* decision. *See King v. Rivas,* 555 F.3d 14, 20 (1st Cir.2009) (dicta explaining that "where attorney's fees are allowed, the statutes sometimes include attorney's fees 'as costs' and other times allow costs 'and' attorney's fees, avoiding *Marek*"). The report and recommendation therefore examined the terms of the Rule 68 offer itself to ascertain whether it expressly or impliedly included attorney's fees. Finding the offer silent with respect to attorney's fees, this court detailed the reasons why it did not include fees. (Docket Entry # 44, pp. 18–40).

In conclusion, this court recommended denying the motion for relief from judgment and suggested that the clerk enter a Rule 68 judgment for $15,000 forthwith.

This court also recommended denying the motion for attorney's fees and costs (Docket Entry # 37) without prejudice and allowing plaintiff the opportunity to renew the motion after the judgment issued. In November 2007, the court adopted the Report and Recommendation.

On December 12, 2007, the court entered a judgment in plaintiff's favor for $15,000. (Docket Entry # 46). The two sentence judgment expressly directed plaintiff to file the motion for attorney's fees within ten days.[5] On December 26, 2007, plaintiff filed the presently pending motion for attorney's fees which incorporates the original motion and exhibits documenting the time and expenses incurred. (Docket Entry # 48). Defendant opposed the motion (Docket Entry # 49) and plaintiff filed a reply brief (Docket Entry # 52).

After this court set a hearing on the motion in February 2009, the parties engaged in more serious settlement negotiations. In late April 2009, defendant filed a motion to enforce a settlement. After conducting an evidentiary hearing, this court issued a second Report and Recommendation recommending the denial of the motion to enforce the settlement.

## DISCUSSION

### I. *PREVAILING PARTY*

■ The issue of plaintiff's prevailing party status involves the intersection of the Rule 68 judgment and the Supreme Court's 2001 decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Defendant main-

---

**4.** Although a " 'Rule 68 Offer of Judgment is usually considered self-executing,' " *Fafel v. Dipaola,* 399 F.3d 403, 413–414 (1st Cir. 2005), judgment did not enter until December 2007.

**5.** The court later extended the time period. (Docket Entry # 47).

tains that plaintiff is not a prevailing party because of the lack of a judge's substantive involvement in the merits. In addition to the lack of judicial imprimatur, defendant points out that plaintiff did not accomplish anything of social value. Given the absence of any "ongoing relationship that will be altered," defendant submits that the acceptance of the Rule 68 offer amounts to no more than a voluntary change in conduct that *Buckhannon* rejects as a basis for an attorney's fee award. (Docket Entry # 49).

Prior to *Buckhannon*, First Circuit precedent instructed that a Rule 68 judgment confers prevailing party status to a plaintiff even if the Rule 68 offer states, like the one in the case at bar, that it " 'is not to be construed either as an admission' " of liability " 'or that the Plaintiffs have suffered any damage.' " *Stefan v. Laurenitis,* 889 F.2d 363, 369 (1st Cir. 1989); *see also Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835 (acknowledging that "a consent decree does not always include an admission of liability by the defendant").[6] The First Circuit in *Stefan* held that the plaintiffs, who obtained a Rule 68 judgment in the amount of $16,000, were prevailing parties within the meaning of 42 U.S.C. § 1988 ("section 1988"). *Stefan,* 889 F.2d at 369 ("we hold that a $16,000 settlement is not de minimis, and that, on the totality of the circumstances presented, Stefan and Dunn are 'prevailing parties' " under section 1988).

The 2001 *Buckhannon* decision undeniably changed the legal landscape. *Gautreaux v. Chicago Housing Authority,* 491 F.3d 649, 655 (7th Cir.2007) (*"Buckhannon* reshaped litigation over attorney's fee awards"). The decision involved the fee shifting provisions of the ADA as well as another federal statute although the court's reasoning applies "generally to all fee-shifting statutes that use the 'prevailing party' terminology."[7] *Smith v. Fitchburg Public Schools,* 401 F.3d 16, 22 n. 8 (1st Cir.2005); *accord Aronov v. Napolitano,* 562 F.3d 84, 89 (1st Cir.2009) (quoting *Smith,* 401 F.3d at 22 n. 8). As interpreted in this circuit, *Buckhannon* "held that for a party to be considered 'prevailing,' there must be a 'material alteration of the legal relationship of the parties,' and there must be 'judicial *imprimatur* on the change.' " *Smith v. Fitchburg Public Schools,* 401 F.3d at 22 (quoting *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835, with citations omitted) (emphasis in original).

■ A material alteration of the parties' legal relationship takes place if a party " ' "succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit." ' " *Boston's Children First v. City of Boston,* 395 F.3d 10, 14 (1st Cir.2005) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 293 (1st Cir.2001) (same; quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933); *accord Richardson v. Miller,* 279 F.3d 1, 3 (1st Cir.2002) (party prevails "if he can show that he 'succeeded on an important issue in the case, thereby gaining at least some of the benefit he sought in bringing suit' "). "Put another way, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Gay Officers Action League v. Puerto Rico,* 247 F.3d at 293.

---

**6.** Defendant's reliance on similar language in the accepted Rule 68 offer is therefore misplaced.

**7.** As discussed infra, the FMLA does not employ the prevailing party terminology.

The judgment awards plaintiff $15,000 thereby achieving a change in defendant's behavior toward plaintiff by requiring defendant to pay a not insignificant sum of money. By recovering the $15,000 award, plaintiff succeeded on an important issue, to wit, the payment of $15,000 in monetary damages thereby achieving a portion of the benefits he sought in filing suit. *See Rhodes v. Stewart*, 488 U.S. 1, 3–4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (recognizing that a judgement that produces a "payment of damages ... affects the behavior of the defendant towards the plaintiff"). Although plaintiff did not receive all of the requested relief,[8] the recovery was neither technical nor de minimis. *Cf. Smith v. Fitchburg Public Schools*, 401 F.3d at 26 (examining relief requested in complaint, finding that settlement included all of the relief and concluding that "there was a material alteration in the legal relationship" between the parties).[9] Furthermore, a nominal damages award "serves to alter the legal relationship between the parties such that the plaintiff must be considered a prevailing party." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 200 (1st Cir.2009) (citing *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)); *Buckhannon*, 532 U.S. at 603, 121 S.Ct. 1835; *Boston's Children First v. City of Boston*, 395 F.3d at 14–15 (award of nominal damages after bench trial sufficient to obtain prevailing party status).

Finally, the court in *Stefan* applied an analysis similar to the foregoing first portion of the *Buckhannon* analysis, to wit, the material alteration of the parties' relationship. The court then concluded that the Rule 68 judgment of $16,000 satisfied the standard. The court explained this analogous standard as follows:

Stefan and Dunn, in this case, would be "prevailing parties" within the meaning of section 1988, provided that they "succeeded on 'any significant issue in [the] litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas Teachers [v. Garland Independent School Dist.,* 489 U.S. 782] 109 S.Ct. [1486] at 1493 [103 L.Ed.2d 866 (1989)]] (quoting *Nadeau [v. Helgemoe]*, 581 F.2d [275], at 278–79 [ (1st Cir.1978) ] ). At a minimum, Stefan and Dunn have succeeded or "prevailed" if their lawsuit can be said to have changed "the legal relationship" between them and Laurenitis, Wysocki, and the town ... Although the injunction was denied, they did receive $16,000 in damages as a result of the settlements. Hence, it is clear that Stefan and Dunn succeeded in obtaining some of the relief sought, and did achieve one of their objectives in bringing this suit, viz. monetary damages.

*Stefan v. Laurenitis*, 889 F.2d at 369.

Consequently, while the $15,000 recovery was not accompanied by any societal change, plaintiff gained some of the benefits he sought by procuring a monetary award. The award materially altered the parties' legal relationship by imposing a legally enforceable obligation on defendant to pay plaintiff this not insignificant sum of money. *See Grissom v. The Mills Corporation*, 549 F.3d 313, 319 (4th Cir.2008) (Rule 68 "judgment created a material alteration of the legal relationship between Plaintiff and Defendant by imposing upon Defendant a legally enforceable obligation to pay Plaintiff $130,000.00"). Given this material alteration in the parties' legal relationship, this court turns to the second

---

**8.** The complaint seeks back pay, front pay, reinstatement, lost benefits as well as emotional distress and punitive damages.

**9.** The necessary judicial imprimatur, however, was lacking in *Smith. Id.* at 26–27.

aspect of the prevailing party inquiry, to wit, the existence of judicial imprimatur on the change.

On a substantive basis, the court performed little review of the merits. Defendant therefore legitimately and understandably argues that the Rule 68 judgment awarding $15,000 was not on the merits. Instead, it was simply a voluntary change in conduct unaccompanied by the required judicial imprimatur, according to defendant.

The *Buckhannon* opinion unequivocally rejects the catalyst theory as a means to confer prevailing party status. *Buckhannon*, 532 U.S. at 610, 121 S.Ct. 1835 (holding that " 'catalyst theory' is not a permissible basis for" attorney's fee award under ADA and another federal statute); *Doe v. Boston Public Schools*, 358 F.3d 20, 24 (1st Cir.2004) (*Buckhannon* "rejected the catalyst theory as a basis for the fee award"); *Richardson v. Miller*, 279 F.3d at 4–5 ("we are constrained to follow" *Buckhannon*'s "broad directive and join several of our sister circuits in concluding that the catalyst theory may no longer be used"). The decision also unambiguously rejects a "private settlement as sufficient grounds for

'prevailing party' status." *Doe v. Boston Public Schools*, 358 F.3d at 25. The *Buckhannon* court's reasoning for rejecting private settlements is that such settlements:

> do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal.[10]

*Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835; *Doe v. Boston Public Schools*, 358 F.3d at 25.

A close analysis of the implications of a Rule 68 judgment and the meaning of judicial imprimatur as interpreted in two First Circuit cases dealing with private settlements after the *Buckhannon* decision [11] leads to the conclusion that plaintiff is a prevailing party. The Fourth and Eleventh Circuits concur. *Grissom v. The Mills Corporation*, 549 F.3d at 316–319 (entry of Rule 68 judgment by clerk for $130,000 provided material alteration of parties' legal relationship and judicial imprimatur to confer prevailing party status under *Buckhannon* ); *Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-*

---

**10.** As discussed below, the Rule 68 judgment contains both of these characteristics.

**11.** *Aronov v. Janet Napolitano*, 562 F.3d at 89–92; *Smith v. Fitchburg Public Schools*, 401 F.3d at 21–27. *Aronov* involved a settlement between the plaintiff and the government to remand the action to the United States Citizenship and Immigration Service. Without a hearing or representations by the court about the parties' negotiations, the court entered an order, which the parties agreed was a final judgment, granting the joint motion to remand. *Aronov v. Janet Napolitano*, 562 F.3d at 87 & 93–94 (denying prevailing party status and finding the remand order "alone not enough to establish the needed imprimatur").

*Smith* concerned a dismissal by the court after the plaintiff signed a settlement agree-

ment securing the requested special education services. *Smith v. Fitchburg Public Schools*, 401 F.3d at 21 & 26–27. The *Smith* court rejected prevailing party status inasmuch as the parents did not obtain a final judgment on the merits or an incorporation of the private settlement into a consent decree thereby failing to satisfy a narrow reading of *Buckhannon*. The dismissal order also failed to incorporate the terms of the settlement or retain jurisdiction over the agreement thereby failing to satisfy one of the two broader readings of *Buckhannon* espoused by the Fourth Circuit in *Smyth v. Rivero*, 282 F.3d 268, 283 (4th Cir.2002), and the other broad reading of *Buckhannon* espoused by the Seventh Circuit in *T.D. v. LaGrange School District No. 102*, 349 F.3d 469, 480 (7th Cir.2003).

*op., Inc.*, 298 F.3d 1238, 1248 (11th Cir. 2002) (Rule 68 judgment for $45,000 conferred prevailing party status and achieved judicial imprimatur even though "court exercises little substantive review over a Rule 68 offer").

As explained in *Aronov, Buckhannon* "identified two and only two situations which meet the judicial imprimatur requirement: where plaintiff has 'received a judgment on the merits' . . . or 'obtained a court-ordered consent decree.'" *Aronov v. Napolitano*, 562 F.3d at 89 (quoting *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835). The present Rule 68 judgment does not qualify as a judgment on the merits. Hence, this court turns to whether the judgment provides the necessary judicial imprimatur as a court ordered consent decree. *See Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835 ("settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees").[12]

*Aronov* formally recognized that a court ordered consent decree is not always required. Thus, if the order at issue "contains the sort of judicial involvement and actions inherent in a 'court-ordered consent decree,'" then it can constitute the requisite judicial imprimatur. *Aronov v. Napolitano*, 562 F.3d at 89; *cf. Smith v. Fitchburg Public Schools*, 401 F.3d at 23 ("[i]n this circuit, we have not squarely addressed whether judgments on the merits or consent decrees are the only forms of relief sufficient to confer prevailing party status").[13]

The *Aronov* decision identifies three factors that the *Buckhannon* court emphasized to distinguish between a private set-

tlement that fails the judicial imprimatur test and a court ordered consent decree that satisfies the test. *Aronov v. Napolitano*, 562 F.3d at 90. Those factors, which this court considers in turn in the context of the change in legal relationship accomplished by the Rule 68 judgment, are as follows:

> The first was that the change in legal relationship must be "court-ordered." *See id.* at 604, 121 S.Ct. 1835. Second, there must be judicial approval of the relief vis-à-vis the merits of the case. *Buckhannon* cited *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), which held a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." Third, there must be judicial oversight and ability to enforce the obligations imposed on the parties. *See Buckhannon*, 532 U.S. at 604 n. 7, 121 S.Ct. 1835 (noting that judicial oversight is inherent in consent decrees but not in private settlements).

*Aronov v. Napolitano*, 562 F.3d at 90.

The first factor is readily apparent. The district judge issued the Rule 68 judgment which ordered the payment of the $15,000.[14] The change was therefore court ordered. Moreover, unlike a private settlement agreement, a Rule 68 offer is filed with the court and the "clerk must then enter judgment." Rule 68(a), Fed.R.Civ.P.

The more difficult inquiry involves the second factor. *Aronov* instructs that "there must be judicial approval of the relief vis-à-vis the merits of the case." *Aronov v. Napolitano*, 562 F.3d at 90.

---

**12.** Settlement agreements enforced through a court ordered consent decree thus differ from private settlements which lack such judicial engagement.

**13.** The *Aronov* court therefore decided what the *Smith* court left open.

**14.** The deputy clerk signed the judge's name on his behalf. (Docket Entry # 46).

Similar merits based language, *see Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ("respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail"); *accord Buckhannon*, 532 U.S. at 603–604, 121 S.Ct. 1835 (quoting *Hewitt* ); *Richardson v. Miller*, 279 F.3d at 3 (quoting *Hewitt* ); *see Race v. Toledo–Davila*, 291 F.3d 857, 859 (1st Cir.2002) ("individual may be entitled to attorney's fees" without obtaining final judgment after a trial on the merits "but he must obtain relief based ' "on the merits of at least some of his claims," ' "),[15] favors defendant's position that there was no judicial imprimatur on the change in the parties' legal relationship.

On the other hand, a number of characteristics of the Rule 68 judgment evidence that this court's involvement and the involvement of the district judge in entering the judgment are similar to characteristics inherent in a court ordered consent decree. First, unlike a typical Rule 68 offer, *see Utility Automation 2000 v. Choctawhatchee Electric*, 298 F.3d at 1248 (unlike consent decree, "court exercises little substantive review over a Rule 68 offer"), this court reviewed the terms of the Rule 68 offer and the surrounding circumstances in depth to ascertain the existence of any ambiguity. (Docket Entry # 44). Against the objections of defendant that the offer did not include fees, this court recommended that judgment enter and that the court allow plaintiff the opportunity to renew the fee motion after entry of the judgment. (Docket Entry # 44). Admittedly, such a review still falls short of a court's review of a consent decree to ascertain whether the terms are fair. *See Aronov v. Napolitano*, 562 F.3d at 91 (court approval of consent decree involves "some appraisal of the merits" inasmuch as court reviews "terms to be sure they are fair and not unlawful"). It was, however, more than a rubber stamp of a private settlement agreement leading to a Rule 41, Fed. R.Civ.P., stipulation of dismissal. Indeed, although in dicta, the First Circuit in *Fafel* characterized a Rule 68 judgment as " 'a consent judgment of a particular kind' " due to the unique features of the rule. *Fafel v. Dipaola*, 399 F.3d 403, 413–414 (1st Cir.2005).

Second, although a Rule 68 judgment arises from the parties' settlement, the court remains involved even after judgment enters. *Fafel v. Dipaola*, 399 F.3d at 414. Thus, "a court may still be called upon" to decide a motion under Rule 60(b), Fed.R.Civ.P. ("Rule 60(b)"), "to vacate the Rule 68 judgment." *Id.* Like this court's review of the terms of the Rule 68 offer, a court's review of a Rule 60(b) motion to overturn a Rule 68 judgment may require

---

**15.** Both *Race* and *Richardson* are distinguishable from the case at bar. *Race* did not obtain a final judgment incorporating the terms of the voluntary dismissal. *Race v. Toledo–Davila*, 291 F.3d at 858–859 (voluntary dismissal after entry of preliminary injunction did not entitle the plaintiff to fees as a prevailing party). Here, as discussed infra, the judgment incorporates the terms of the Rule 68 offer.

The district court's intervention in *Richardson* "nudging" the parties to agree that the defendant would return some of the seized material amounted to only limited success.

*Richardson v. Miller,* 279 F.3d at 2–3 (dismissing case with prejudice). The plaintiff did not receive a ruling on the "crux of the complaint," i.e., that the seizure was unconstitutional, and the court did not enjoin the defendant City of Boston "from using the materials in its investigation" or otherwise "order the parties to comply" with the agreement. *Id.* at 3. In contrast, the court's intervention in the case at bar in the judgment and in the ruling regarding the scope of the Rule 68 offer is more substantial and therefore more analogous to a court ordered consent decree.

the court "to interpret the terms of the underlying offer of judgment in order to determine whether relief from judgment is warranted." *Id.*

It is also significant that a Rule 68 judgment incorporates the terms of the Rule 68 offer. *Fafel,* 399 F.3d at 414. These characteristics of the Rule 68 judgment contrast sharply with the characteristic noted in *Aronov* as insufficient to satisfy the second factor, to wit, that "a 'judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.' "[16] *Aronov v. Napolitano,* 562 F.3d at 90 (quoting *Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673); *see Kokkonen,* 511 U.S. at 376–382, 114 S.Ct. 1673 (noting that to retain ancillary jurisdiction to enforce settlement, federal court must embody settlement contract in the dismissal order or retain jurisdiction over the contract). Distinguishing a private settlement agreement from a Rule 68 judgment, the court in *Fafel* reasoned that "the terms of an accepted offer of judgment are ... part and parcel of a Rule 68 judgment" and "[a]s a result, a Rule 68 judgment necessarily incorporates the terms of the underlying offer." *Fafel v. Dipaola,* 399 F.3d at 414. Hence, a court is more than merely aware of the Rule 68 settlement. Rather, it incorporates the terms of the Rule 68 offer into its judgment. *See Aronov v. Napolitano,* 562 F.3d at 90 (describing second factor of judicial approval of "relief vis-à-vis the merits" and pointing to *Buckhannon*'s citation of *Kokkonen* and the latter court's holding).

The material change in the parties' relationship accomplished by the Rule 68 judgment also has the kind of "judicial oversight and ability to enforce the obligations" imposed by the acceptance of the Rule 68 offer that *Aronov* depicted as the third factor. *See Aronov v. Napolitano,* 562 F.3d at 90. Simply stated, by entering a Rule 68 judgment, the court retains ancillary jurisdiction to enforce the terms of the underlying offer. *Fafel v. Dipaola,* 399 F.3d at 415 ("district court justifiably concluded that it had ancillary jurisdiction to enforce its Rule 68 judgment").

In short, analyzing the content of the Rule 68 judgment "against the entire context," *Aronov v. Napolitano,* 562 F.3d at 92, it contains sufficiently analogous qualities to a court ordered consent decree such that plaintiff qualifies as a prevailing party. Most notably, the judgment incorporates the terms of the accepted Rule 68 offer and it received court approval. The judicial order in the form of judgment required defendant to pay plaintiff $15,000. Ancillary jurisdiction exists to enforce the obligations imposed on the parties.

It is also worth recognizing that the court in *Aronov,* which did not find prevailing party status, interpreted a fee shifting statute which concerned a waiver of sovereign immunity and was therefore strictly construed. *See Id.* at 88. Sovereign immunity and the accompanying stricter construction it entails, *id.,* is not at issue in this case.

Finding prevailing party status also adheres to First Circuit precedent, *Stefan v. Laurenitis,* 889 F.2d at 367–371 (the defendant's Rule 68 offer of $16,000 leading to settlement conferred prevailing party status).[17] Circuit court cases addressing

---

16. Indeed, the *Aronov* court emphasized this characteristic by repeating it later in the opinion. *Aronov,* 562 F.3d at 91. As again stated in *Aronov,* " 'Mere involvement by the court in a settlement is not enough. There must be

some official judicial approval of the settlement.' " *Id.* (quoting Seventh Circuit case in parenthetical).

17. Defendant quotes *Stefan* for the argument that, "resolution of this case neither creates

Rule 68 judgments after *Buckhannon* uniformly find prevailing party status. *Grissom v. The Mills Corporation*, 549 F.3d at 316–319; *Utility Automation 2000, Inc. v. Choctawhatchee Electric Co-op., Inc.*, 298 F.3d at 1248. Considering the entire circumstances, including defendant's argument vis-à-vis the absence of societal value as well as the extent of a substantive merits review and recovery, this court concludes that plaintiff is a prevailing party entitled to attorney's fees under the ADA.

■ In the alternative, plaintiff is entitled to an award under the language of the FMLA. The plain language of section 2617(a)(3), which does not include the prevailing party language, mandates an award in the event of *"any* judgment awarded to the plaintiff." 29 U.S.C. § 2617(a)(3) (emphasis added). The statute further provides that, "The court in such an action *shall,* in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617 (emphasis added).

■ The "triggering event" for an attorney's fee award under the FMLA is therefore "an actual 'judgment' in favor of the plaintiff." *Franzen v. Ellis Corporation*, 543 F.3d 420, 430 (7th Cir.2008); *accord Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, 2006 WL 709799, *5 (E.D.Pa. March 13, 2006) (FMLA "only allows attorney's fees to a plaintiff who has secured a favorable judgment"); *Hoffman v. Verizon New Jersey Inc.*, 2005 WL

1076258, *3 (D.N.J. May 4, 2005) ("FMLA does not provide for an attorney's fee unless the plaintiff wins a 'judgment' "). A Rule 68 judgment falls within the reach of the statute's plain language that refers to "any judgment." The statute's use of the mandatory language that the court "shall" allow an attorney's fee award reinforces this finding. The Rule 68 judgment entered in December 2007 thereby entitles plaintiff to an award of fees under section 2617(a)(3).[18]

Plaintiff also seeks an award of attorney's fees under section nine of chapter 151B. The relevant mandatory language dictates that, "If the court finds for the petitioner, it shall … award the petitioner reasonable attorney's fees." Mass. Gen. L. ch. 151B, § 9. The Rule 68 judgment provides the necessary finding to support an award. In addition, "the liberal construction" afforded chapter 151B, "as stated in § 9," lends further support for an award. *Nardone v. Patrick Motor Sales, Inc.*, 46 Mass.App.Ct. 452, 706 N.E.2d 1151, 1152 (1999) (approving attorney's fee award under section nine due in part to statute's "liberal construction"). Given the mandatory language and liberal construction, and for reasons similar to those already stated, plaintiff is a prevailing party entitled to an attorney's fees award under section nine of chapter 151B. *See City of Salem v. Massachusetts Commission Against Discrimination*, 44 Mass.App.Ct. 627, 693 N.E.2d 1026, 1041 (1998) ("city notes (correctly) that the complainant must be a 'prevailing party' in order to be

new law, advances the frontiers of civil rights for disabled individuals, nor 'deter[s] future harassment.' *Stefan*, 889 F.2d at 369." (Docket Entry # 49). The argument leaves off the additional language that the settlement in *Stefan* "may deter future harassment *of Stefan and Dunn*," *Stefan*, 889 F.2d at 369 (emphasis added), as opposed to society at large. Finally, although the $16,000 award in the 1991

decision in *Stefan* equates to more money once adjusted for inflation, the $15,000 amount is still neither a de minimis nor a technical recovery.

**18.** In any event, even if the prevailing party language applied, plaintiff would still satisfy the standard as previously explained.

awarded attorney's fees" under chapter 151B); *Wilfert Bros. Realty Co. v. Massachusetts Commission Against Discrimination*, 2007 WL 738908 *3 (Mass.Super. Feb. 7, 2007) (noting, in context of chapter 151B fee award, that "court may award attorneys['] fees to a prevailing party even if the award includes fees for work on unsuccessful claims or issues"); *Irish American Gay, Lesbian and Bisexual Group of Boston v. City of Boston*, 1994 WL 878945, *1 (Mass.Super. Nov. 18, 1994) (noting, in context of fee request under section nine of chapter 151B, that, "[T]he plaintiff is the prevailing party here in every relevant sense"); *see also Dartt v. Browning–Ferris Industries*, 427 Mass. 1, 691 N.E.2d 526, 532 (Mass.App.Ct.1998) ("judicial analyses of the ADA are helpful" to interpret handicap discrimination cases under chapter 151B); *Westinghouse Elec. Supply Corp. v. Massachusetts Commission Against Discrimination*, 1999 WL 140492, *7 (Mass.Super. March 5, 1999) (recognizing that "[a]nalogous federal statutory provisions concerning fee awards are instructive in construing Chapter 151B" and that ADA is federal counterpart to chapter 151B).

Before turning to a calculation of fees, this court finds that special circumstances do not warrant a denial of fees. Although this court questions whether defendant raises such an argument,[19] plaintiff submits that defendant has not shown special circumstances. (Docket Entry # 48, pp. 8–10). Out of an abundance of caution, therefore, this court addresses the argument.

Special circumstances warranting a denial of fees exist "if there is a showing of 'outrageous' or 'inexcusable' conduct by plaintiffs (or plaintiffs' counsel) during the litigation of the case." *Lewis v. Kendrick*, 944 F.2d 949, 956 (1st Cir.1991). Special circumstances may exist when a "fee application reflects '(1) no "good faith" effort to exclude excessive, redundant, or otherwise unnecessary hours, (2) no reduction for time spent on unsuccessful claims, and (3) no allowance for the limited "degree of success" achieved by the plaintiff.'" *Williams v. Hanover Housing Authority*, 113 F.3d 1294, 1301 (1st Cir.1997). Examining the record, which includes plaintiff's offer to reduce the fee request by $15,000 (Docket Entry # 52), defendant fails to show conditions exist making an award unjust. *See generally De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 200 (" 'burden is on the defendant to show that unusual conditions would make an award unjust or inappropriate' ").

## II. *FEE AWARD*

Using a lodestar method, plaintiff's first motion (Docket Entry # 33) requested fees for a January 2004 to March 2007 time period in the total amount of $116,270 broken down as follows: (1) 32.4 hours expended by Shannon Liss–Riordan, Esq. ("Liss–Riordan") at an hourly rate of $350 yielding a total of $11,340; (2) 367 hours expended by Rebecca G. Pontikes, Esq. ("Pontikes") at an hourly rate of $275 yielding a total of $100,925; and (3) 53.4 hours expended by legal assistants Jessica Shelton ("Shelton") and Payson Ayer–Dufner ("Ayer–Dufner") at an hourly rate of $75 yielding a total of $4,005. (Docket Entry # 33). In the present motion, which incorporates the prior arguments and exhibits in the first motion (Docket Entry # 48, n. 3), plaintiff adds an additional 20.3

---

**19.** Defendant does argue that the results obtained and lack of success justify a fee adjustment. *See generally Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir.1997). Defendant further argues that plaintiff is not entitled to any fee given the minimal degree of success obtained. (Docket Entry # 49, ¶ II).

hours expended by Liss–Riordan at the same hourly rate and 37.1 hours expended by David Milton, Esq. ("Milton") at an hourly rate of $200.[20] The additional fees total $14,525 for a March 27 to December 26, 2007 time period resulting in a total of $130,795 in fees and $4,209.53 in expenses.[21]

■ As is customary in this circuit, this court turns to the lodestar calculation. *See Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 336 (1st Cir.2008) (reasonable attorney's fee "typically is determined through the lodestar method"). Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. 1933.

■ The base calculation of the lodestar is relatively straight forward. It begins "by multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 207 (1st Cir.2009); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").

A. *Hours Expended*

■ A court may reduce the actual hours which are excessive in light of the non-complexity of the task. *See Foley v. City of Lowell*, 948 F.2d 10, 19 (1st Cir. 1991) (lack of complexity constitutes acceptable reason to reduce number of actual hours). In determining the hours productively spent, a court may also adjust the hours "to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 207 (citation omitted); *accord Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950–952 (1st Cir.1984) (court may "subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary").

■ Where, as here, "the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories," the "rationale for discounting hours spent on unsuccessful claims does not apply." *Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir.2007). Accordingly, the failed chapter 93 claim does not warrant a reduction of hours. The successful recovery of $15,000 arose from the same common core of facts and the legal theories interrelated. Counsel devoted much of their time to the litigation

---

**20.** Plaintiff sets out the following, brief support for the $200 hourly rate:

[Plaintiff] is also requesting fees at the rate of $200/hour for an associate attorney, David Milton, who worked on the briefing opposing BU's motion for relief from judgment. David Milton is a 2001 graduate of New York University Law School, with approximately five years of litigation experience. This requested rate for an associate attorney with this experience is reasonable, as demonstrated by the evidence Plaintiff submitted regarding associate billing rates in connection with his original fee petition.

(Docket Entry # 48, n. 3). Responding to defendant's challenge that the work was "undocumented, unsubstantiated and unnecessary time" (Docket Entry # 49), plaintiff's reply brief notes that the court in the *Sprague v. United Airlines* case, 2002 WL 1803733 (D.Mass. Aug. 7, 2002) (Docket Entry # 33, Ex. C), condones the practice.

**21.** The above amount excludes the offer to reduce the fee request by $15,000. (Docket Entry # 52).

as a whole, *see id.* at 428–429, and time spent on the unsuccessful chapter 93 claim interrelated with the other successful claims. The claims all rest on a common core of facts that involve the requests for accommodation for sick leave, the alleged harassment on the job regarding plaintiff's health conditions, the refusal to terminate an individual, the alleged retaliation and the resulting termination. Eliminating certain hours based on a lack of interconnectedness is not warranted. *Cf. U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II,* 546 F.3d 26, 39 (1st Cir.2008) (when "fee adjustment is intended to reflect the success or failure of claims that are themselves separate and distinct, an inquiring court may simply exclude time spent in litigating the unsuccessful claims").

■ In addition to reducing various hours as " 'excessive, redundant or otherwise unnecessary,' " a court "may either discount or disallow" hours where time records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 336; *accord Gay Officers Action League v. Puerto Rico,* 247 F.3d at 297 (contemporaneous time records kept "in reasonable detail" are ordinarily required). Documentary preconditions to a fee award typically require the fee applicant to "submit a 'full and specific accounting of the tasks performed, the dates of performance, and the number of hours expended on each task.' " *Tennessee Gas Pipeline Co. v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir. 1994) (quoting *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 527 (1st Cir.1991)); *see Esso Standard Oil Co. (Puerto Rico) v. Lopez Freytes,* 577 F.Supp.2d 553, 557 (D.P.R.2008) ("documentation provided must be full and spe-cific, offering a description of both the time spent and the subject matter of the task performed") (internal brackets omitted). "Bills which simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question should be refused." *Calhoun v. Acme Cleveland Corporation,* 801 F.2d 558, 560 (1st Cir.1986). As further explained below, a number of entries simply reflect an email or telephone call with opposing counsel without explaining the nature or subject matter of the task. A fuller accounting of the task performed is required in the event the surrounding entries or dates do not elucidate or detail the task.

■ In addition, hours for work that duplicates or mimics another lawyer's hours when the record fails to reflect a legitimate need for a second attorney are subject to disallowance. *U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II,* 546 F.3d at 44 (noting "familiar problem" of overstaffing in cases involving prospect of fee shifting and that "Goldberg's work, taken at face value, appears to mimic portions of Grantland's work" with "absolutely nothing in the record" to suggest "a legitimate need for a second attorney"); *Wennik v. Polygram Group Distribution, Inc.,* 304 F.3d 123, 134 (1st Cir.2002) (" 'the time for two or three lawyers in a courtroom or conference, when one would do, "may obviously be discounted" ' ") (quoting *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986), in parenthetical); *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992) (same); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 953 (1st Cir.1984) (finding "no justification for the presence of two top echelon attorneys at each proceeding"). Although the complexity of modern litigation may reasonably necessitate "the deployment of multiple attorneys," a "court should not hesitate

to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League v. Puerto Rico,* 247 F.3d at 297.

Examining the hours billed with the foregoing principles in mind, the records contain several entries for a "telephone call" or an "email" to opposing counsel or plaintiff. *See, e.g., Stokes v. Saga International Holidays, Ltd.,* 376 F.Supp.2d 86, 94 (D.Mass.2005) ("party requesting attorneys' fees has the duty to provide adequate records to the court, and a record of a telephone call without describing the reason for the call is insufficient"). Such a brevis description of the task performed provides little information about the need for the expenditure of time or the reasonableness of the amount of time expended. *See Tennessee Gas Pipeline Co. v. 104 Acres of Land,* 32 F.3d at 634 (affirming reduction given inadequate documentation for charges described by lower court as " ' "Confer with co-counsel," "Confer with client," [22] "Review materials," "Review documents," and "Legal Research" without any indication of the subject matter involved' "). In certain instances, however, this court can deduce the general reason by examining the date of the task or the surrounding entries.[23] *See Bristol Warren Regional School Committee v. Dasilva,* 2007 WL 951570, *11 (D.R.I. March 27, 2007) (disallowing entries for telephone calls in excess of half hour but noting

possibility of deducing "the likely subject of the task from either the date the task was performed or the surrounding entries").

Because this court cannot ascertain the nature of the task, whether it was unnecessary and/or the reasonableness of the amount of time expended given the inadequate documentation, this court exercises its discretion to eliminate the hours for such tasks.[24] Entries that fall into this category where neither the dates nor the surrounding entries elucidate the task are as follows: March 12 and May 26, 2004 emails by Pontikes (.30 hours); February 10, 17 and 18, 2005 emails and telephone call by Pontikes (.50 hours); March 2, 3 and 29, 2005 emails by Pontikes (.70 hours); May 27 and June 24, 27 and 28, 2005 emails and telephone call by Pontikes (.80 hours); August 9, 11, 19, 24 and 25, 2005 emails and telephone call by Pontikes (5.80 hours); October 11 and December 13, 15 and 16, 2005 emails and telephone conferences by Pontikes (2.00 hours); and February 24, April 18, May 3 and June 2, 2006 emails, letter and telephone conference by Pontikes (1.50 hours). The total reduction for such inadequate documentation is 11.60 hours of Pontikes' time.

 The next category of problematic entries consists of more than 35 hours of time to oppose and argue against the mo-

---

**22.** This court is cognizant of the attorney client issues inherent in describing a task such as an email or conference with a client and takes this difficulty into consideration in determining what email or conference to reduce.

**23.** This court does not deduct for entries when this court can deduce the need for the fee or the reasonableness of the amount of time expended by virtue of the surrounding entries, the date or the person receiving the communication.

**24.** Contrary to plaintiff's argument (Docket Entry # 52, n. 10), the unsupported statement by an arbitrator in an unpublished decision (Docket Entry # 33, Ex. F, p. 10) does not convince this court to overlook the brevis entries. While this court does not demand a detailed or discrete description of each task, this court does require some modicum of general information beyond a reference to a "telephone call" or "email," without which this court cannot assess the reasonableness and the necessity for the communication.

tion to dismiss [25] and an estimated 195 hours to oppose and argue against the motion for summary judgment.[26] The time is excessive. *See, e.g., Dixon v. International Brotherhood of Police Officers,* 434 F.Supp.2d 73, 81 (D.Mass.2006) (32.8 hours on average to respond to each of five summary judgment motions deemed excessive); *Horney v. Westfield Gage Company,* 227 F.Supp.2d 209, 216 (D.Mass.2002) (reducing 84 hours to research and draft opposition to summary judgment motions by 30%); *Wilcox v. Stratton Lumber, Inc.,* 921 F.Supp. 837, 846 (D.Me.1996) (considering estimated 35 hours for each of two attorneys to prepare response to summary judgment motion excessive).

The bulk of the entries with respect to the motion to dismiss originate from Pontikes' work. As a seasoned, ten year veteran in the area of employment law at the time of a March 2007 affidavit, the amount of time expended is not necessary to respond to the motion to dismiss. *See generally Pearson v. Fair,* 980 F.2d 37, 47 (1st Cir.1992) (noting that high hourly rates " 'presuppose particular familiarity and expertise, which should reduce' the number of attorneys needed to litigate").

The motion to dismiss raised relatively straight forward statute of limitations is-

sues, including the applicability of the continuing violation doctrine, and the preemption of chapter 93 because chapter 151B provides the exclusive means to seek redress for employment discrimination. Pontikes, however, spent 23.9 hours to draft a 13 page opposition to the motion. She spent another six hours on January 29, 2005, to prepare for oral argument and an estimated 4.6 additional hours to prepare for the argument and appear in court on January 31, 2005.[27] Moreover, she did not work alone. Liss–Riordan expended 6.5 hours to prepare the opposition in 2004 and an additional three hours to prepare for and attend the afternoon hearing on January 31, 2005.[28] The 23.9 hours to prepare the opposition on the part of Pontikes where, as here, she received assistance from Liss–Riordan, are excessive. The 23.9 hours are therefore reduced to 16 hours corresponding to two days of work. Having expended such a large amount of time to prepare the opposition, the six plus hours to prepare for oral argument is likewise excessive and thus reduced by two hours.

Liss–Riordan's time is not reduced because the reductions in Pontikes' time adequately reduce the excessive amount of time to prepare the opposition and attend

---

**25.** The foregoing hours exclude time attributed to scheduling a hearing on the motion to dismiss on the same day as a scheduling conference. In addition, on January 31, 2005, Pontikes spent 5.6 hours and Liss–Riordan spent four hours on discovery matters as well as preparing and appearing for oral argument on the motion to dismiss. Reducing each attorney's time by one hour to account for time spent on discovery issues, this court attributes 7.6 hours of the 9.6 hours spent on January 31, 2005, to the motion to dismiss tasks.

**26.** The foregoing 195 hours breaks down to 53.4 hours by two legal assistants and five hours by Liss–Riordan with the remainder of time expended by Pontikes. Defendant's con-

tention that plaintiff spent "more than 100 hours" to prepare the opposition and more than 30 hours of "lawyer time" to prepare for oral argument more than likely refers only to the hours of Pontikes and Liss–Riordan as opposed to the 53.4 hours of the legal assistants who are not lawyers.

The estimated 195 hours also excludes entries related to extensions of time. Section II(B) addresses these and other entries involving extensions of time.

**27.** See footnote 24.

**28.** See footnote 24. Liss–Riordan also spent .2 hours on January 5, 2005, on the motion to dismiss and unrelated discovery matters.

oral argument to reflect a reasonable time period. Because Liss–Riordan participated in drafting the motion, her presence at oral argument does not constitute overstaffing. Moreover, the timeliness and thus viability of the causes of action were significant issues thereby warranting the need for both counsel. *See generally Gay Officers Action League v. Puerto Rico*, 247 F.3d at 297; *Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F.Supp. 1379, 1381 (D.Mass.1983) ("nature and complexity of the case warranted in-court use of associate counsel").

In comparison to opposing the motion to dismiss, the amount of time reasonably required and necessary to oppose the summary judgment motion was greater because of the larger factual record consisting of discovery documents and the increased number of legal issues. The summary judgment motion addressed issues based on the merits as well as the statute of limitations. Defendant filed 58 exhibits to support a 27 page supporting memorandum raising multiple issues. Marshaling discovery material and affidavits, plaintiff filed a relatively well organized, factually supported opposition. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 337 n. 3 ("skill requisite to perform the legal services properly" relevant to determine fee award); *cf. Cooper v. United States Railroad Retirement Board*, 24 F.3d 1414, 1417–1418 (D.C.Cir. 1994) (reducing attorney's fee award by 200 hours, in part, because briefs "were not well-organized" and "devoted considerable space to arguments extraneous to the main issues").

That said, the approximately 195 hours expended in relation to the task are excessive.[29] Pontikes spent 3.7 hours simply to read the summary judgment motion and prepare for a meeting with plaintiff on June 7, 2006. During the same month, she spent an additional 8.7 hours reading the motion, drafting and outlining the response and reviewing comparator documents. In July 2006, she expended 24.8 hours related to opposing the summary judgment motion.[30] After having expended in excess of 35 hours related to opposing the summary judgment motion, Pontikes spent 80.9 hours in August[31] before filing the opposition on August 28, 2006. On one day alone she spent 14.2 hours of time revising and reviewing the opposition filings. All tolled and excluding work related to extensions of time to file the opposition, Pontikes spent slightly less than 120 hours related to preparing and filing the opposition to the summary judgment motion.

Moreover, Pontikes had the assistance of Shelton and Ayer–Dufner. These two individuals, who plaintiff refers to as "legal assistants," prepared spreadsheets which plaintiff represents analyzed plaintiff's absences. (Docket Entry # 52, n. 10). The time expended by these two legal assistants to create and prepare spreadsheets in June and July 2006 totaled 53.4 hours.[32]

---

**29.** This court did not include time spent in May, July and August 2006 regarding extensions of time to file the opposition.

**30.** The above hours do not include .40 hours of Pontikes' time spent on July 14, 2006, to draft a motion for an extension of time and corresponding emails. Instead, this court reduces the hourly rate for this entry as well as for entries involving similar work. These entries are addressed in section II(B). The above figure likewise does not include the generic and unenlightening July 12 and 15, 2006 entries identified as emails to plaintiff and opposing counsel.

**31.** The figure excludes time spent on August 17, 2006, related to drafting an extension of time.

**32.** Pontikes's affidavit describes the work in greater detail. (Docket Entry # 33, Ex. D, ¶ 11).

Meanwhile, Liss–Riordan contributed 1.5 hours of work in August 2006 working on the summary judgment opposition.

The expenditure of 118.1 hours of time by Pontikes,[33] described as the primary attorney (Docket Entry # 33, Ex. D, ¶ 7), and 53.4 hours of time by two legal assistants to prepare the opposition is excessive and unnecessary. After a careful review of each entry, this court reduces Pontikes' hours to 70 hours and Shelton and Ayer–Dufner's hours to 33.

The court heard oral argument on the summary judgment motion on January 29, 2007. Having already expended a large portion of time preparing the opposition, it should not have taken Pontikes 19.5 hours in January 2007 to prepare for oral argument. This excessive amount of time is reduced to eight hours.

Given the significance of the case dispositive argument, Liss–Riordan's attendance does not constitute overstaffing. This is particularly true given that the court exhibited the time saving practice of deciding the prior dispositive motion from the bench.

Plaintiff also seeks reimbursement for 37.1 hours of time spent by Milton. Milton spent the majority of his time preparing the response to defendant's motion for relief from judgment (Docket Entry # 37). The opposition involved somewhat complex and difficult legal issues vis-à-vis the exclusion of attorney's fees in the Rule 68 accepted offer and plaintiff's status as a prevailing party. While 37.1 hours is a large amount of time, it was necessary to address the issue. Put another way, the time is not excessive given the complex nature of the task.

Defendant additionally asks this court to deny fees for Milton because the 37.1 hours of time is "undocumented" and "unsubstantiated."[34] The billing records, which consist of the Walsh invoice (Docket Entry # 48, Ex. A), adequately document Milton's time in sufficient detail. Not only do the records allow this court to perform a review but they also allow defendant to dispute the fee request for Milton's time. *See generally Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992) (quoting *Calhoun v. Acme Cleveland Corporation,* 801 F.2d 558, 560 (1st Cir.1986)). The absence of an affidavit to support Milton's fee, while not condoned by this court, does not, as urged by defendant (Docket Entry # 49, p. 13), warrant denying recovery for Milton's fees.

B. *Hourly Rates*

■ "After determining the time reasonably expended by the prevailing party's legal team, the court must focus on the rates to be applied to those hours." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 337. Ordinarily, in determining a reasonable hourly rate, the starting point is the prevailing market rate in the relevant community. *Andrade v. Jamestown Housing Authority,* 82 F.3d 1179, 1190 (1st Cir. 1996). The relevant community for determining hourly rates is the community where the court sits. *Alfonso v. Aufiero,* 66 F.Supp.2d 183, 197 (D.Mass.1999); *accord Stokes v. Saga International Holidays, Ltd.,* 376 F.Supp.2d at 92. The "prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation" thus constitutes the relevant community. *Parker v. Town of Swansea,* 310 F.Supp.2d 376, 388 (D.Mass.2004); *Stokes v. Saga International Holidays, Ltd.,* 376 F.Supp.2d at 92 (Boston provides "the 'rel-

---

**33.** The foregoing hours exclude extensions of time which section II(B) addresses.

**34.** See footnote 19.

evant community' against which the rates will be determined"). The prevailing market rate in a community is the rate charged " 'for similar services by lawyers of reasonably comparable skill, experience and reputation.' " *Andrade v. Jamestown Housing Authority,* 82 F.3d at 1190 (quoting *Blum v. Stenson,* 465 U.S. 886, 985 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

█ A district court is not, however, "bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates." *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 8 (1st Cir.1993); *accord Andrade v. Jamestown Housing Authority,* 82 F.3d at 1190 (court "entitled to rely upon its own knowledge of attorney's fees in the surrounding area in arriving at a reasonable hourly rate"). It is true that defendant's response to the first motion for attorney's fees included the statement that, "To be clear, the University does not take issue with the hourly rate requested by counsel." (Docket Entry # 38, p. 12). At present, however, defendant vigorously objects to the hourly rates of Liss–Riordan ($350), Pontikes ($275) and Milton ($200).[35] In any event, because "it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like," *Gay Officers Action League v. Puerto Rico,* 247 F.3d at 296; *see Weinberger v. Great Northern Nekoosa Corporation,* 925 F.2d at 529 ("district court will have to undertake an independent review of the time records to determine 'the reasonableness of the hours spent and the hourly rate sought' "); *see also Foley v. City of Lowell,* 948 F.2d at 19, this court has an independent responsi-

bility to review and determine the appropriate hourly rate.

Turning to the hourly rates of Pontikes and Liss–Riordan, they are adequately documented. Plaintiff filed affidavits from both Liss–Riordan, lead counsel, and Pontikes, primary counsel, as well as supporting affidavits from a number of attorneys in the community.

Liss–Riordan began practicing exclusively in the field of employment law in 1998 after completing a two year clerkship at the district court level. Her reputation is well established as evidenced by the fact that *Massachusetts Lawyers Weekly* named her a lawyer of the year in 2002. She has litigated a number of high profile cases. (Docket Entry # 33, Ex. C, ¶ 10). She also supplies an affidavit from an experienced employment law attorney who shares office space attesting to the $350 rate as consistent with the prevailing market rate for attorneys with Liss–Riordan's level of skill and experience. (Docket Entry # 33, Ex. G). Other affidavits provide support for analogous hourly rates for area employment law attorneys with similar experience. (Docket Entry # 33, Ex. J, K & L). The supporting affidavits evidence that the $350 rate charged by Liss–Riordan is commensurate with the hourly rates of attorneys with reasonably comparable skill and experience in the community providing similar services.

Pontikes, a member of the Massachusetts bar since her 1997 graduation from law school, has concentrated her practice in employment law since 2000. Like Liss–Riordan, she received community recognition for her skills when *Boston Magazine* named her "one of Massachusetts' Super Lawyers and as a Rising Star." (Docket

---

**35.** Defendant only summarily objects to the "time billed by paralegals." (Docket Entry # 49).

Entry # 33, Ex. D, ¶ 6). In addition to her own affidavit, the supporting affidavit of another, experienced employment attorney documents the requested $275 fee. Pontikes received an hourly rate of $250 in 2005 in a case before the MCAD. In 2003, the MCAD awarded an attorney with similar skill and experience an hourly rate of $275. The $275 hourly rate is therefore reasonable and commensurate with rates in the community for attorneys with similar skill and experience.

Plaintiff provides less, albeit some, documentary support for Milton's $200 hourly rate. Milton, a 2001 law school graduate who worked as an associate at the firm, had approximately five years of litigation experience when he worked on the brief opposing the motion for relief from judgment. Guided by this court's own knowledge of rates charged in the community, *see Andrade v. Jamestown Housing Authority*, 82 F.3d at 1190, as well as case law that adheres to a lower rate for associ-

ates with similar experience, *see LaPlante v. Pepe*, 307 F.Supp.2d 219, 225 (D.Mass. 2004) (approving hourly rate of $150 for seven year litigation associate); *Norris v. Murphy*, 287 F.Supp.2d 111, 118 (D.Mass. 2003) (approving $125 hourly rate as reasonable for 1999 law school graduate practicing in relevant area since graduation); *cf. McDonough v. City of Quincy*, 353 F.Supp.2d 179, 188 (D.Mass.2005) (approving $200 hourly rate as reasonable for attorney with 15 years of experience including 11 years of relevant experience), a $175 hourly rate is reasonable for associates in the Boston community with comparable skills and experience performing similar drafting and research services.[36]

Plaintiff seeks a $75 hourly rate for Shelton and Ayer–Dufner. Pontikes attests that the rate is "in keeping with the market rate charged for services such as theirs." (Docket Entry # 33, Ex. D, ¶ 12). Both college graduates and "legal assistants,"[37] Shelton and Ayer–Dufner pre-

---

**36.** In arriving at this rate, this court considered all of the record including a supporting affidavit attesting to a $215 hourly rate in 2002 for an employment law associate with one and a half years experience (Docket Entry # 33, Ex. M).

**37.** Defendant objects to the hourly rate for the "two paralegals" on the basis that "[p]aralegals reasonably bill between $50 and $65 per hour." (Docket Entry # 49, p. 14). Defendant refers to the individuals solely as "paralegals." Notably, defendant does not seek to avoid payment based on an argument that the individuals are not attorneys but, instead, are college students. Defendant therefore waived the issue. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir.1999) ("district court is free to disregard arguments that are not adequately developed"); *see generally Lipsett v. Blanco*, 975 F.2d at 939 n. 5 (appellant challenging fee request waived argument that paralegal rates were not common practice in community by not raising it in appellate brief).

Alternatively, construing the factual record based on Pontikes' affidavit, this court finds

that the "legal assistants" are either law students or paralegals who worked under the direct supervision of an attorney, i.e., Pontikes. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar"); *see also Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 128 S.Ct. 2007, 2010, 170 L.Ed.2d 960 (2008) ("fees for paralegal services must be recoverable at prevailing market rates" under 5 U.S.C. § 504); *Case v. Unified School District No. 233*, 157 F.3d 1243, 1249 (10th Cir.1998) (section 1988 "fees for attorneys, law clerks, and legal assistants are all determined" using lodestar method); *Erath v. Academic Stone Setters, Inc.*, 2008 WL 4146200, *3 (E.D.N.Y. Sept. 8, 2008) ("affirmation" setting out "description of the billing rates as ... $75 per hour for legal assistants" considered reasonable and recoverable albeit in different community); *see also Cook v. Brown*, 68 F.3d 447, 453 (Fed.Cir.1995) (courts approve "inclusion of fees for paralegals, law clerks, and law students ... on the theory that their work con-

pared an analysis of plaintiff's absences using records from defendant, plaintiff and plaintiff's physicians. They cross checked dates and prepared a spreadsheet to show that defendant's records contradicted plaintiff's records and showed that plaintiff was at work on occasions when defendant claimed he was absent. (Docket Entry # 33, Ex. D, ¶ 12).

The requested $75 rate is roughly in line with rates approved for legal interns. *See Hudson v. Dennehy,* 568 F.Supp.2d 125, 133 (D.Mass.2008) (awarding $100 hourly rate for paralegal "[t]aking into account the prevailing market rates"); *Porter v. Cabral,* 2007 WL 602605, *12–14 (D.Mass. Feb. 21, 2007) ($65 hourly rate for paralegals reasonable for Boston area); *Dixon v. International Brotherhood of Police Officers,* 434 F.Supp.2d at 86–88 ($60 hourly rate for paralegals and law students reasonable); *McDonough v. City of Quincy,* 353 F.Supp.2d at 188–89 ($50 hourly rate in Boston for paralegal reasonable given work performed of taking notes and following trial); *Change the Climate, Inc. v. Massachusetts Bay Transportation Authority,* 2005 WL 3735100, *3 (D.Mass. June 8, 2005) (approving $100 hourly rate for legal interns and paralegals and $75 hourly rate for law students); *Roberts v. Department of State Police for Com.,* 2002 WL 31862711, *1 (Mass.Super. Sept. 26,

2002) ($75 hourly rate for paralegal with eight years experience considered prevailing market rate for such services). The $75 hourly rate is therefore reasonable for similar services performed by legal assistants with comparable experience.

As a final matter concerning the hourly rate, both Pontikes and Liss–Riordan performed work on the uncomplicated tasks of preparing the first fee petition and drafting or responding to requests for extensions of time. Turning to the former, before the March 26, 2007 filing of the first petition, Pontikes expended 8.2 hours drafting the fee petition and accompanying affidavits, reviewing bills to support the fee petition and researching hourly rates for paralegals.[38] Liss–Riordan spent two hours on March 26, 2007, to finish drafting the fee petition and affidavits. On March 16, 2007, she spent three hours of time devoted to legal research on the Rule 68 offer and drafting the fee petition and affidavits.[39] Finally, Liss–Riordan spent four hours on December 26, 2007, to prepare the renewed motion for attorney's fees. Defendant classifies the work as "non-core" and seeks a lower rate.

As a prevailing party, a plaintiff "normally is entitled to attorneys' fees" for work on a fee request. *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 340 (citing

---

tributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs"); *see, e.g., Dixon v. International Brotherhood of Police Officers,* 434 F.Supp.2d at 87 (awarding fees to "paralegals and law students").

**38.** The foregoing time does not include time spent on the relatively more complex task of attorney's fees vis-à-vis Rule 68. Legal research on the relatively complex issue of whether the Rule 68 offer included attorney's fees is significantly more complicated than

simply compiling hours and " 'documenting what a lawyer did and why he or she did it.' " *Brewster v. Dukakis,* 3 F.3d 488, 494 (1st Cir.1993) (explaining simplicity of preparing fee request as justifying lower hourly rate).

**39.** This court therefore applies the lower hourly rate only to the portion, which this court estimates as 1.5 hours, attributed to drafting the fee petition and affidavits. Liss–Riordan's time on March 15, 2007, considering the offer of judgment and researching the issue of attorney's fees is afforded the higher hourly rate in light of the more complex task as explained in the previous footnote.

*Brewster v. Dukakis,* 3 F.3d 488, 494 (1st Cir.1993)). "Because litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 340;[40] *accord Brewster v. Dukakis,* 3 F.3d at 494 ("since time spent in this exercise often amounts to little more than 'documenting what a lawyer did and why he or she did it,' it may fairly be compensated at a reduced rate") (quoting *Gabriele v. Southworth,* 712 F.2d 1505, 1507 (1st Cir.1983)).

The forgoing principle applies to the case at bar. Pontikes' work drafting the fee petition and reviewing the bills is an uncomplicated exercise that warrants a reduction of the $275 hourly rate. Liss–Riordan's time drafting the fee petition and the affidavits is equally subject to an hourly rate lower than $350. Given the nature of the task, an hourly rate of $150 for Pontikes' and Liss–Riordan's time is reasonable.[41] *See, e.g., Edge v. Norfolk Financial Corporation,* 2005 WL 2323193, *5 (D.Mass. Aug. 29, 2005) (compensating the "plaintiff's attorney at a rate of $100 per hour for the time spent on the original fee petition" and reducing hourly rate to $137.50 for responding to legal argument and conducting legal research).

As to the work performed in relation to extensions of time, it is not the type of work that warrants the partner level hourly rates sought by plaintiff. *See Bogan v. City of Boston,* 489 F.3d at 429 (court can reduce billable rate because partner assumed role of associate in performing less complex tasks); *see McMillan v. Massachusetts Society for Prevention of Cruelty to Animals,* 140 F.3d 288, 308 (1st Cir. 1998) ("[t]ime spent on clerical or secretarial tasks by attorneys should be compensated at a rate commensurate with the nature of the tasks"); *Lipsett v. Blanco,* 975 F.2d at 940 ("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them"). Various entries for both Pontikes and Liss–Riordan seek compensation respectively at the hourly rates of $275 and $350 for work drafting or assenting to motions for extension of time as well as responding to emails regarding extensions of time for discovery deadlines, fee petitions, a pretrial conference and summary judgment filings. An hourly rate of $150 is commensurate with this type of routine, associate level task. The entries reflecting this type of work which warrant the reduction of the hourly rate to $150 are as follows: (1) 1.3 hours spent by Pontikes on August 30 and 31, 2005; (2) .50 hours spent by Pontikes on November 23 and 29, 2005; (3) .30 hours spent by Pontikes on March 3, 2006; (4) .30 hours spent by Pontikes on May 10 and 11, 2006; (5) .40 hours spent by Pontikes on July 14, 2006; (6) .20 hours spent by Pontikes on August 17, 2006; (7) .30 hours spent by Liss–Riordan on March 27, 2007; and (8) .20 hours spent by Liss–Riordan on December 20, 2007.

In sum, the following excessive and unnecessary hours are eliminated: 81.1 (Pontikes) and 20.4 (Shelton and Ayer–Dufner). Eight hours of Liss–Riordan's time and 11.2 hours of Pontikes' time are calculated

---

**40.** The First Circuit in *Torres–Rivera* noted that, "Prevailing parties in civil rights cases also may recover reasonable attorneys' fees incurred in successfully litigating a variety of post-judgment motions." *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d at 340–341.

**41.** Defendant also seeks a reduction of hourly rates for non-core work regarding discovery. Defendant submits that "this Court generally reduces the rate where the case did not proceed to trial." (Docket Entry # 49). Having reviewed each entry and considered the hourly rate for the services at issue, no *further* reduction is warranted.

at the lower $150 hourly rate. An hourly rate of $175 applies to Milton's time. Multiplying the hourly rates by the time expended, subject to the foregoing adjustments, results in a lodestar of $103,035.

## C. *Adjustments to Lodestar*

 Once calculated, the resulting lodestar "amount is presumptively reasonable" although the "court enjoys some discretion to adjust the lodestar amount upwards or downwards." *Burke v. McDonald,* 572 F.3d 51, 56 n. 5 (1st Cir. 2009). Adjustment is based on a number of "different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." *De Jesus Nazario v. Morris Rodriguez,* 554 F.3d at 207. Additional factors may also bear upon an upward or downward adjustment. *See Coutin v. Young & Rubicam Puerto Rico Inc.,* 124 F.3d at 337 & n. 3 (collecting factors and noting that court "retains the authority to adjust the lodestar after initially computing it— but it must do so in accordance with accepted principles"). Citing *Farrar,* defendant urges this court not to award any fee or to reduce the lodestar due to the limited success plaintiff achieved.[42] (Docket Entry # 49).

The "results obtained" factor is undeniably significant. *See U.S. v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named Flash II,* 546 F.3d at 38 ("extent of success achieved by a prevailing party is 'a crucial factor' in shaping a fee award"). Mindful of the complexities, success is a nuanced and multi-dimensional concept. *Id.* ("the term 'success' is multi-dimensional"); *De Jesus Nazario v.*

*Morris Rodriguez,* 554 F.3d at 207 ("trial court should be mindful of the complexities of defining the results obtained"); *Edge v. Norfolk Financial Corporation,* 2005 WL 2323193, *6 (D.Mass. Aug. 29, 2005) ("[p]roperly incorporating the results obtained into analysis is a nuanced affair").

Of the various constellations of success, *see Coutin v. Young & Rubicam Puerto Rico Inc.,* 124 F.3d at 338–339 (identifying three measures of success to factor into fee reduction calculation), as indicated earlier the circumstances do not implicate severable claims. *See Id.* at 338. As previously discussed, the chapter 93 claim involved a common core of facts and interrelated legal theories. Defendant's assertion that the dismissal of the chapter 93 claim merits a reduction (Docket Entry # 49, p. 13) is therefore misguided.

Citing *Farrar,* defendant also asserts that plaintiff should receive no award because of the nominal and technical nature of the award. The legal principle is correct but the facts do not support it. It is true that, "If a prevailing party succeeds on all (or substantially all) of her claims, but receives no significant relief (e.g., the jury awards only nominal damages), the trial judge sometimes may deny fees altogether because this scenario often 'highlights the plaintiff's failure to prove actual, compensable injury.'" *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d at 339 (quoting *Farrar,* 506 U.S. at 115, 113 S.Ct. 566). But the $15,000 award, while low, is not a nominal amount. The disparity at issue in *Farrar,* in which the plaintiff sought a $17,000,000 recovery but received only $1, was also far greater than the disparity in the case at bar.

---

42. The *Farrar* decision, as cogently explained by the First Circuit in *Boston's Children,* considered whether nominal damages conferred prevailing party status. Finding that it did, the technical nature of a nominal damages award then bears "on the reasonableness of the fees awarded rather than on prevailing party status." *Boston's Children First v. City of Boston,* 395 F.3d at 15.

It is also appropriate to consider an adjustment where the plaintiff "prevail[s] on all [his] claims, but" receives only "limited (though not insubstantial) redress." *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 339. Plaintiff recovered on the claims, with the exception of the interrelated chapter 93 claim, but received only a small monetary recovery relative to the relief sought. The $15,000 amount is far less than the recovery requested of back wages from the time of the November 2001 termination. In addition, plaintiff did not procure the requested relief of reinstatement or punitive damages.[43] Plaintiff therefore succeeded on a claim by claim basis but achieved little of the relief requested.

In addition to considering the skimpiness of the monetary award, the success did not further a public purpose. *See Boston's Children First v. City of Boston*, 395 F.3d at 16 (noting relevant factor of "whether the success furthered a public purpose"); *accord De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 207 (in assessing results obtained, "we look to a combination of the plaintiff's claim-by-claim success, the relief achieved, and *the societal importance of the rights vindicated*") (emphasis added); *see also Farrar v. Hobby*, 506 U.S. at 121–122, 113 S.Ct. 566 (Farrar's $1 success "might be considered material if it also accomplished some public goal other than occupying the time and energy of counsel, court, and client"). In fact, this litigation will have little, if any,

deterrent impact. *See O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir.1997) (noting that lower "court recognized several important factors" including "the deterrent impact of this litigation"). The Rule 68 judgment, arising by virtue of an accepted Rule 68 settlement offer, lacks any societal importance of a vindicated right. *See Rodriguez–Hernandez v. Miranda–Velez*, 132 F.3d 848, 859 (1st Cir.1998); *accord Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 338.

On the other hand, it is appropriate to consider "the nature and length of the professional relationship with the client." *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 337–339 n. 3. The firm, Pyle, Rome, Lichten, Ehrenberg & Liss–Riordan, P.C., has represented plaintiff since 2004. (Docket Entry # 33, Ex. D, ¶ 2). This long standing professional relationship militates against a lodestar reduction.

Having taken into account a number of factors in arriving at the lodestar, such as the novelty of certain tasks, the skill, reputation and experience of the attorneys involved, it is not necessary to consider these factors, noted by the court in *Coutin*, 124 F.3d at 337–338 n. 3, as bearing upon an upward or downward adjustment of the lodestar. Considering inter alia the results obtained, the firm's professional relationship with plaintiff and given this court's familiarity with counsel and with the latter part of this litigation, a 30% reduction of the lodestar is warranted.

---

**43.** In taking into account the success achieved relative to the requested relief, this court treats this fact as "one facet" of the calculus as opposed to an "independent justification" for a downward adjustment. *See Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d at 340 ("to the extent-if at all-that the ratio of the damages requested to the judgment received may be taken into account in fixing an appropriate award, this proportion may be used only as one facet of the trial court's determination of the quality of the results obtained" as opposed to "an independent justification for a fee reduction"). A proportionate recovery is not the standard. *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d at 207 (though court may take "meager damage award" into consideration, Supreme Court "has squarely disclaimed 'the proposition that fee awards under § 1988 should be proportionate to the amount of damages a civil plaintiff actually recovers' ").

Performing the calculations, plaintiff is entitled to a fee award of $72,124.50 ($103,-035 × 30% = $30,910.50) ($103,035 - $30,910.50 = $72,124.50).

## III. *EXPENSES*

Plaintiff seeks reimbursement for litigation expenses incurred for court filing fees, service of summons, deposition transcripts,[44] medical records and photocopying costs. The total sought is $4,209.53.

The ADA allows an award of "a reasonable attorney's fee, including litigation expenses," to a prevailing party. 42 U.S.C. § 12205. Defendant does not object to an award of the forgoing expenses. In fact, defendant does not address the matter. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d at 260 (discussing waiver).

Permissible litigation expenses under the ADA may include court filing and service of process fees and deposition fees. *Wilson v. Haria and Gogri Corporation*, 2007 WL 1795737, *4 (E.D.Cal. June 20, 2007) (awarding litigation expenses under ADA for "filing and service of process fees, depositions, [and] courier services"); *see Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1037 (D.Or.1996) (examining legislative intent and finding that "litigation expenses" under ADA encompass "the same out-of-pocket expenses that are recoverable under 42 U.S.C. § 1988"); *see also Poy v. Boutselis*, 352 F.3d 479, 490 (1st Cir.2003) (quoting *System Management, Inc. v. Loiselle*, 154 F.Supp.2d 195, 204 (D.Mass.2001), in parenthetical "that 'reasonable out-of-pocket expenses in-

curred by the attorney and normally charged to the client' could be awarded pursuant to statutory authority of § 1988"). Photocopying expenses are also compensable under the ADA. *See Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1354 (S.D.Fla.2006).

In light of the foregoing and defendant's lack of objection, an award of the requested $4,209.53 in expenses is appropriate.

### *CONCLUSION*

In accordance with the foregoing discussion, this court **RECOMMENDS**[45] that the motion for attorney's fees and costs (Docket Entry # 48) be **ALLOWED** to the extent that plaintiff receive an attorney's fee award of $72,124.50 and expenses in the amount of $4,209.53.

---

44. Plaintiff used the deposition transcripts of the two witnesses at issue to defend against defendant's summary judgment motion. (Docket Entry # 25).

45. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any

party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).